UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| BUILDERS GROUP LLC, d/b/a BUILDERS GROUP TECHNOLOGIES,<br><br>    Plaintiff,<br><br>  -against-<br><br>QWEST COMMUNICATIONS CORPORATION,<br><br>    Defendant. | 1:07-cv-5464 (DAB)<br><br>ECF Case<br><br><br>CIVIL ACTION |

---

## BRIEF IN SUPPORT OF QWEST'S MOTION
## TO STAY ACTION AND COMPEL ARBITRATION

---

DRINKER BIDDLE & REATH LLP
140 Broadway
39th Floor
New York, New York 10003
(212) 248-3140
Attorneys For Defendant
Qwest Communications Corporation

On the Brief:

Stephen R. Long

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 4

STATEMENT OF FACTS ...................................................................................................... 4

ARGUMENT ........................................................................................................................... 6

     UNDER APPLICABLE LAW, THIS ACTION SHOULD BE STAYED AND
     THE PARTIES' DISPUTE SHOULD BE SENT TO ARBITRATION ........................... 6

          I.     Federal Law Applies .................................................................................. 6

          II.    The Dispute Should Be Sent to Arbitration ................................................ 7

          III.   The Action Should be Stayed ..................................................................... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**                                       **PAGE**

Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,
    58 F.3d 16 (2d Cir. 1995) .................................................................................5

In re Complaint of Hornbeck Offshore Corp.,
    981 F.2d 752 (5th Cir. 1993) ............................................................................6

Fletcher v. Kidder, Peabody & Co., Inc.,
    81 N.Y.2d 623, 619 N.E.2d 998, 601 N.Y.S.2d 686 (1993)............................3

Fisser v. International Bank
    282 F.2d 231, 233 (2d Cir. 1960)......................................................................6

Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,
    815 F.2d 840 (2d Cir. 1987)  (citing Fisser v. International Bank, 282 F.2d 231,
    233 (2d Cir. 1960)) ........................................................................................5,6

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991).............................................................................................4

Hooters of Am., Inc. v. Phillips,
    173 F.3d 933 (4th Cir. 1999) ............................................................................6

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Co.,
    252 F.3d 218 (2d Cir. 2001)..............................................................................4

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.
    460 U.S. 1, 24 (1983).........................................................................................4

Oldroyd v. Elmira Sav. Bank, FSB,
    134 F.3d 72 (2nd Cir. 1998)..............................................................................6

Prima Paint v. Flood & Conklin Mfg. Co.,
    388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)..................................3

Shearson/Am. Exp., Inc. v. McMahon,
    482 U.S. 220 (1987)...........................................................................................4

Smith Barney Shearson v. Sacharow,
    91 N.Y.2d 39, 689 N.E.2d 884, 666 N.Y.S.2d 990 (1997)...............................5

Southland Corp. v. Keating,
    465 U.S. 1 (1984)...............................................................................................4

United States v. Bankers Ins. Co.,
    245 F.3d 315 (4th Cir. 2001) ............................................................................6

**STATUTES**

9 U.S.C. § 2..............................................................................................................1, 2
9 U.S.C. §§ 3, 4....................................................................................................1, 2, 6

## **MISCELLANEOUS**

H.R.Rep. No. 96, 68th Congress, 1st Sess. 1 (1924) ................................................................3
Charles Alan Wright et al., Federal Practice and Procedure, § 3569 (2d ed. 1984) ........................4

## INTRODUCTION

Defendant, Qwest Communications Corporation ("Qwest"), submits this brief in support of its motion to stay this action and compel arbitration.

Despite the parties' broad, clear written agreement to arbitrate "all claims, disputes and other matters arising out of" their agreement, plaintiff has brought this civil action and seeks to continue it in pursuit of an unspecified amount of money allegedly due on the contract. Qwest disputes the claims of plaintiff, Builders Group LLC ("Builders Group") and wants to pursue its defenses and counterclaims in the forum agreed to by the parties – arbitration.

Under the applicable law, this case should be stayed, and the parties' disputes should be sent to arbitration in accordance with their agreement. 9 U.S.C. §§ 2-4.

## STATEMENT OF FACTS

The facts underlying this motion are set forth in the accompanying Affidavits of Robert Bachmeier and Stephen R. Long. In essence, plaintiff's commencement of this action is an attempt to avoid the parties' agreement to arbitrate disputes such as those underlying this case.

Effective June 25, 1998, Builders Group, a New York limited liability company, and Qwest, a Delaware corporation with its principal place of business in Colorado, entered into a Master Construction Agreement, known as Master Contract No. BZ980026 ('the Master Contract"). Affidavit of Robert Bachmeier in Support of Motion to Stay and Compel Arbitration, Exhibit B ("Bachmeier Aff. Ex. B"). The Master Contract was amended effective the same day by the Amendment to the Master Construction Agreement. Bachmeier Aff. Ex. C. The Master Contract set the basic terms of the parties' agreement by which Builders Group would provide certain construction materials and services to Qwest at its facilities in New York, including Qwest's facility at 60 Hudson Street. ("the Hudson Street project") Bachmeier Aff. ¶8.

1

With regard to dispute resolution, the Master Contract provided Qwest with the option to send every type of issue between the parties to arbitration in the place of its choice. It states:

> All claims, disputes and other matters in question between Contractor and Qwest arising out of, or relating to this Master Agreement, any Contract Order, the Project, the Design Services, the Construction Work, the Contract Documents or the breach thereof may, at Qwest's sole option, and only upon the exercise of that sole option by Qwest, together or separately as Qwest sees fit, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining as modified hereby.

Bachmeier Aff. Ex. B §43(a). The Master Contract provides further terms pertaining to arbitration. See id. at (b)-(i).

There is no question that the arbitration provisions of the Master Contract apply to the dispute underlying this case. Indeed, plaintiff admits the parties' agreement relative to the Hudson Street project. See Complaint ¶3. And, while the Complaint pleads various alternative causes of action (with varying degrees of success in actually stating certain of the claims), this case is nothing but a breach of contract action for alleged underpayment by Qwest for the construction materials and services provided by Builders Group on the Hudson Street project.

Qwest has been unable thus far to locate signed copies of the Master Contract, despite a diligent search. Bachmeier Aff. ¶11. As set forth in the following section of this brief, however, the legal requisite for an enforceable arbitration agreement is that the agreement be in writing, not necessarily that it be signed by the parties. Rather, there must only be evidence that the parties intended to be bound by the agreement to arbitrate. The record on this point is indisputable.

Under the Master Contract, the parties would specify the terms of particular construction projects in agreements known as Contract Orders. See Bachmeier Aff. ¶5 and Ex. B §1, 4 and Glossary of Terms at p. 45. One such Contract Order, No. 008349, described the Hudson Street

2

project work. Id. ¶¶5-7 Ex. A. This Contract Order, which was signed by both parties, expressly acknowledged and incorporated "all terms and provisions under the terms of Master Construction Agreement No. BZ980026." Id. ¶7 and Ex. A at page 1. Thus, Builders Group unambiguously expressed its intent to be bound by the arbitration provisions of the Master Contract with respect to its work under the Contract Order in question in this case.

For the reasons discussed in the following section of this brief, this action should be stayed and the parties should be compelled to arbitrate their claims and counterclaims.

## ARGUMENT

### UNDER APPLICABLE LAW, THIS ACTION SHOULD BE STAYED AND THE PARTIES' DISPUTE SHOULD BE SENT TO ARBITRATION.

**I.      Federal Law Applies.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to all contracts "relating to interstate commerce." Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75 (2nd Cir. 1998) (claims concerning interstate transactions are governed by the FAA); Prima Paint v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 n.7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967), quoting H.R.Rep. No. 96, 68th Congress, 1st Sess. 1 (1924)  (FAA applies to all contracts "relating to interstate commerce"). Moreover, the provisions of the FAA control even though the dispute itself may arise under State law. Fletcher v. Kidder, Peabody & Co., Inc., 81 N.Y.2d 623, 630-31, 619 N.E.2d 998, 1001, 601 N.Y.S.2d 686, 689 (1993) ("[I]n situations where the FAA is applicable, it preempts State law on the subject of the enforceability of arbitration clauses . . . . Indeed, the provisions of the FAA are controlling even though the dispute itself may arise under State law."); see also Oldroyd, 134 F.3d at 75 (2d Cir. 1998) ("Any arbitration agreement affecting interstate commerce . . . is subject to the FAA.") (emphasis added) (citing 9 U.S.C. §§

1, 2; <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)); 13B Charles Alan Wright et al., <u>Federal Practice and Procedure</u>, § 3569 (2d ed. 1984) ("[E]ven in . . . an action in state court if a . . . transaction . . . in interstate or foreign commerce is involved, the substantive rules contained in the [Arbitration] Act, based as it is on the commerce . . . power[], are to be applied regardless of state law.").

Here, the Master Contract and the subsidiary Contract Order relate to interstate commerce. Qwest is a Delaware corporation with its principal place of business in Colorado. Builders Group is a New York limited liability company with its principal place of business in New York City. Complaint ¶1. Under the parties' agreements, Builders Group was to provide certain construction goods and services for Qwest in New York. It is beyond rational dispute that the FAA governs here.

**II.    The Dispute Should Be Sent to Arbitration.**

The FAA requires enforcement of the Master Contract's arbitration provision. 9 U.S.C. § 2 ("[A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The United States Supreme Court and the Second Circuit have been very clear in a long line of cases applying the FAA: Arbitration is a favored method of resolving disputes, and, consequently, agreements to arbitrate must be enforced. <u>See, e.g.</u>, <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 24-25 (1991); <u>Shearson/Am. Exp., Inc. v. McMahon</u>, 482 U.S. 220, 226 (1987); <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10 (1984); <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Co.</u>, 252 F.3d 218, 223 (2d Cir. 2001) ("It is familiar law that the Federal Arbitration Act . . . expresses a liberal federal policy favoring arbitration agreements and

that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (internal quotations omitted); Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract.").[1]

The parties' arbitration clause, which encompasses "all claims, disputes and other matters in question between [the parties]," is quite broad. Bachmeier Aff. Ex. B §43(a). Certainly, the breadth of this provision encompasses Builders Guild's claims seeking payment for services it performed pursuant to the very agreement that mandates arbitration. Complaint ¶¶ 3, 10. See generally Louis Dreyfus Negoce, 252 F.3d at 224-25 ("[R]ecognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. . . . When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that touch matters within the main agreement to be arbitrated . . . .") (internal quotation omitted).

It is of no consequence to this motion that the copies of the Master Contract that have been located so far are unsigned. As detailed in the previous section of this brief, and as attested in the motion record, the parties expressly incorporated "all" of the provisions of the Master Contract into the subsidiary Contract Order for the Hudson Street project in a writing signed by both. Bachmeier Aff. ¶¶5-7 and Ex. A at page 1. While the FAA requires a writing, it does not require that the writing be signed by the parties. 9 U.S.C. §3. It has long been the law in this Circuit and elsewhere that a party may be bound by a written agreement to arbitrate, even absent a signature. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987)

---

[1]. Consistent with the FAA, New York law also favors resolution of disputes through arbitration. See generally Smith Barney Shearson v. Sacharow, 91 N.Y.2d 39, 49, 689 N.E.2d 884, 889, 666 N.Y.S.2d 990, 995 (1997) (citing cases demonstrating "the long and strong public policy favoring arbitration" in New York).

(citing <u>Fisser v. International Bank</u>, 282 F.2d 231, 233 (2d Cir. 1960)). The cases make clear that, in the absence of a signature, general principles of contract law apply to determine the parties' intent. <u>Fisser</u>, 282 F.2d at 233.

Here, Builders Group's agreement to arbitrate could not be clearer. It signed Contract Order 008349 which, in turn, incorporated "all" of the Master Contract, including its arbitration provisions. Bachmeier Aff. Ex. A at page 1. This agreement should be enforced.

### III. The Action Should be Stayed.

Because arbitration agreements are "valid, irrevocable, and enforceable," 9 U.S.C. § 2, the FAA mandates a stay of judicial proceedings to allow arbitration to go forward.

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. This stay provision is mandatory. "If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." <u>United States v. Bankers Ins. Co.</u>, 245 F.3d 315, 319 (4th Cir. 2001) (citing <u>Hooters of Am., Inc. v. Phillips</u>, 173 F.3d 933, 937 (4th Cir. 1999); <u>In re Complaint of Hornbeck Offshore Corp.</u>, 981 F.2d 752, 754 (5th Cir. 1993)). This action should be stayed.

## CONCLUSION

For the reasons set forth above, Qwest respectfully requests that the Court enter an order compelling arbitration and staying this action pending resolution of arbitration proceedings.

DATED:   New York, New York
         August 23, 2007

                       **DRINKER BIDDLE & REATH LLP**

                       By: s/ Stephen R. Long
                           Stephen R. Long (SL4501)
                           140 Broadway, 39th Floor
                           New York, New York 10003
                           (212) 248-3140
                           Attorneys for Defendant
                           Qwest Communications Corporation