(INSIDE PLANT)

 

## CHANGE ORDER

| | | | |
|---|---|---|---|
| **Contract No.:** | 008349 | **C. O. # :** | 00-8349-05 |
| **Project:** | 60 Hudson St., New York, NY | **Project No.** | 20132.15956.33019 |
| **Contractor:** | Builder Group Technologies | **Date:** | May 3, 2001 |

**Description of change:**

Reference Design/Build, Part 2, Contract Order No. 008349, effective November 15, 2000.

This Change Order is written to increase Contractor's scope of performance and increase value of said Contract to cover costs for the following summarized items. Incorporated by reference and made a part herein is Attachment No. 1, which provides a breakdown of costs for the additions to the original scope of work.

- Labor and materials for all repairs to existing doors and fire stopping to prepare the space for the existing FM-200 system...........................$48,666.98
- Labor and materials to perform a thermographic study of each joint on the 4000 Amp bus duct riser at every floor, while it is under load for any "hot spots".....................................................................$ 3,179.00

                         **Increased Amount:**    <u>$51,845.98</u>

**Contract Price Summary:**

| | |
|---|---|
| **Previous Total Contract Amount (GMP):** .................................. | $1,692,818.11 |
| **Increase/Decrease per this Change Order:** ................................. | $51,845.98 |
| **Revised Total Contract Amount (GMP):** ................................... | *$1,744,664.09 |

*Note the above total includes Contractor Fee of 10%*

*ALL TERMS AND CONDITIONS OF THE ORIGINAL CONTRACT REMAIN UNCHANGED*

**APPROVED AND ACCEPTED:**

| Qwest Communications Corp. | | Builders Group Technologies | |
|---|---|---|---|
| Company | | Contractor | |
| By | | By | |
| Thomas T. Reilly | 5/8/01 | James Mahiscalco | |
| Director, | | Project Manager | 5-4-01 |
| Contracts and Procurement | | | |
| Name/Title | Date | Name/Title | Date |

**Qwest 0001**

01/18/2006   10:00AM

Contract No. 008349
Change Order No. 00-8349-05
Project No. 20132.15956.33019
New York, NY

**Attachment No. 1**

Qwest 0002

# Builders Group Tecl  ologies

**Phone:** 212 635-0760
**Fax:** 212 981-0329

1 Wall Street Court
10th Floor
New York, NY 10005

## CHANGE ORDER REQUEST
## No. 00-322-00012

| | |
|---|---|
| **TITLE:** FM-200 Site Repairs | **DATE:** 3/19/01 |
| **PROJECT:** 00322-Qwest Communications - Variou | **JOB NO:** 00-322 |
| 60 Hudson Street | **JOB ID:** 101161 |
| New York, NY 10014 | |

**CONTRACT NO:** CON-00322-01

**TO:** Qwest Communications
13952 Denver West Parkway
Building #53
Golden, CO 80401
Phone: 303-445-7137      Fax: 303-445-7219

**ATTN:** Erik Bradford

**RE:**          **To:**          **From:**          **Number:**

## DESCRIPTION OF PROPOSAL

Provide labor and materials for all repairs to existing doors and fire stopping to prepare the space for the existing FM-200 System.

1) Furnish and install new doors and hardware at the following door locations: 2003, 2008, 2005, Rear Map Room Door & Juca Colocation Area.
2) Furnish and install new hardware at the following door locations: 2002, Office 2005, 2007, Front Map Room Door.
3) Provide painting at all new doors and all effected areas.
4) Furnish and install firestopping at all cable tray wall penetrations & clay duct openings.
5) Furnish and install firestopping at all miscellaneous conduit penetrations.
6) Furnish and install new signage at Map Room rear door.
7) Perform (2) independent fan tests to verify room integrity in all zones.

## NOTES:

1) Additional general conditions will be billed as a lump sum COR as required.
2) Assistance from Qwest on site representative will be required to handle all wiring at clay ducts.
3) Adjustment to all existing doors & hardware not requiring replacement as required.
4) Work to be completed in 4-5 weeks, due to the 3 weeks lead time of the doors.

| Item | Description | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|---|---|---|---|---|---|---|---|
| 00001 | Carpentry | 1.000 | Lump Sum | $6,300.00 | 0.00% | $0.00 | $6,300.00 |
| 00002 | Painting | 1.000 | Lump Sum | $2,970.00 | 0.00% | $0.00 | $2,970.00 |
| 00003 | Signage | 1.000 | Lump Sum | $97.00 | 0.00% | $0.00 | $97.00 |
| 00004 | Hardware | 1.000 | Lump Sum | $2,295.98 | 0.00% | $0.00 | $2,295.98 |
| 00005 | Hollow Metal | 1.000 | Lump Sum | $3,470.00 | 0.00% | $0.00 | $3,470.00 |
| 00006 | Glass | 1.000 | Lump Sum | $275.00 | 0.00% | $0.00 | $275.00 |
| 00007 | Firestopping | 1.000 | Lump Sum | $22,835.00 | 0.00% | $0.00 | $22,835.00 |
| 00008 | Fan Testing | 2.000 | Each | $3,000.00 | 0.00% | $0.00 | $6,000.00 |
| 00009 | Fee | 1.000 | Lump Sum | $4,424.00 | 0.00% | $0.00 | $4,424.00 |

| | |
|---|---|
| **Unit Cost:** | $48,666.98 |
| **Unit Tax:** | $0.00 |
| **Lump Sum:** | $0.00 |
| **Lump Tax:** | $0.00 |
| **Total:** | $48,666.98 |

**NOTE: PLEASE RESPOND NO LATER THAN 3/26/01**

**APPROVAL:** Builders Group Technologies
By:
James J. Maniscalco

Date:

Qwest 0003

**Qwest Communications**
By:
Erik Bradford

Date:
01/18/2006   10:00AM

JAN 18 2006 12:24 FR                                          TO 813033911859    P.04/28

# Builders Group Tec' ologies

1 Wall Street Court
10th Floor
New York, NY 10005

Phone: 212 635-0760
Fax: 212 981-0329

**CHANGE ORDER REQUEST**

**No. 00-322-00013**

| | | |
|---|---|---|
| TITLE: | Bus Duct Heat Testing | DATE:    3/27/01 |
| PROJECT: | 00322-Qwest Communications - Variou | JOB NO: 00-322 |
| | 60 Hudson Street | JOB ID:  101161 |
| | New York, NY  10014 | |
| TO: | Qwest Communications | CONTRACT NO.CON-00322-02 |
| | 13952 Denver West Parkway | |
| | Building #53 | |
| | Golden, CO  80401 | |
| | Phone: 303-445-7137       Fax:  303-445-7219 | |
| ATTN: | Erik Bradford | |

RE:            To:                    From:                    Number:

**DESCRIPTION OF PROPOSAL**

Provide labor and materials to perform a thermographic study of each joint on the 4000 Amp bus duct riser at every floor, while it is under load, for any "hot spots".

In order to maintain the integrity of the bus duct, avoid interruption in service, and due to existing obstacles. It is necessary to scan each splice plate with a hand held laser. The technician will record an average temperature through out and point out any problems.

**NOTES:**
1) Additional general conditions will be billed as a lump sum COR as required.

| Item | Description | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|---|---|---|---|---|---|---|---|
| 00001 | Testing | 1.000 | Lump Sum | $2,890.00 | 0.00% | $0.00 | $2,890.00 |
| 00002 | Fee | 1.000 | Lump Sum | $289.00 | 0.00% | $0.00 | $289.00 |

**Qwest 0004**

| | |
|---|---|
| Unit Cost: | $3,179.00 |
| Unit Tax: | $0.00 |
| Lump Sum: | $0.00 |
| Lump Tax: | $0.00 |
| Total: | $3,179.00 |

NOTE: PLEASE RESPOND NO LATER THAN  4/3/01

APPROVAL: Builders Group Technologies

By:  _James J. Maniscalco_

Date:

Qwest Communications

By:  _Erik Bradford_

Date:
01/18/2006   10:00AM

 (INSIDE PLANT)

 *ride the light*

# Qwest.

## CHANGE ORDER

**COPY**

---

| | | | |
|---|---|---|---|
| **Contract No.:** | 008349 | **C. O. # :** | 00-8349-04 |
| **Project:** | 60 Hudson St., New York, NY (20th floor) | **Project No.** | 20132.15956.33019 |
| **Contractor:** | Builders Group Technologies | **Date:** | April 16, 2001 |

**Description of change:**
Reference Design/Build, Part 2, Contract Order No. 008349, effective November 15, 2000.

Revise the GMP Contract Amount per this Change Order to increase Contractor's scope of performance and contract value to cover temporary connection of generator mounted loadbanks directly to the generator to meet time limitations for cut over to permanent power. Then disconnection and removal of same. Incorporated by reference and made a part herein is Attachment No. 1, which provides a breakdown of costs for the additions to the original scope of work.

**Increased GMP Amount:**     $28,447.00

**Reason for change:**
Changes were necessary to meet compressed time line for cut over to permanent power by proving generator reliability via a burn in process under load.

**Contract Price Summary:**

| | |
|---|---|
| **Previous Total Contract Amount (GMP):** ..................................... | $1,664,371.11 |
| **Increase/Decrease per this Change Order:** ................................... | $28,447.00 |
| **Revised Total Contract Amount (GMP):** ...................................... | *$1,692,818.11 |

*Note the above total Includes Contractor Fee of 10%*

*ALL TERMS AND CONDITIONS OF THE ORIGINAL CONTRACT REMAIN UNCHANGED*

**APPROVED AND ACCEPTED:**

| Qwest Communications Corp. | Builders Group Technologies |
|---|---|
| Company | Contractor |
| *TReilly* | *[signature]* |
| By | By |
| Thomas T. Reilly   4/19/01 | James Maniscalco |
| Director, | Project Manager |
| Contracts and Procurement | |
| Name/Title          Date | Name/Title          Date |

**Qwest 0005**

JAN 18 2006 12:24 FR                          TO 813033911859      P.06/28

Contract No. 008349
Change Order No. 00-8349-04
Project No. 20132.15956.33019
New York, NY


**Attachment No. 1**

Qwest 0006

JAN 18 2006 12:24 FR                          TO 813033911859       P.07/28

# Builders Group Technologies

No. 00-322-00005

1 Wall Street Court
10th Floor                          Phone: 212 635-0760
New York, NY 10005                  Fax: 212 981-0329

| | | |
|---|---|---|
| **TITLE:** | Temp of Load Bank | **DATE:** 1/22/01 |
| **PROJECT:** | 00322-Qwest Communications - Variou | **JOB NO:** 00-322 |
| | 60 Hudson Street | **JOB ID:** 101161 |
| | New York, NY 10014 | |
| **TO:** | Qwest Communications | **CONTRACT NO.** CON-00322-02 |
| | 13952 Denver West Parkway | |
| | Building #53 | |
| | Golden, CO 80401 | |
| | Phone: 303-445-7137    Fax: 303-445-7219 | |
| **ATTN:** | Eric Bradford | |

**RE:**        **To:**        **From:**        **Number:**

## DESCRIPTION OF PROPOSAL:

Provide labor and material to temporarily connect the New Load Banks in to the pull box under the generator in order to load the Test Generators.

1) All work will be completed no later than January 23, 2001.
2) All cables will be installed on a temporary basis.
3) HOK will utilize 535 locomotive cable and 500 MCM couple taps.
4) All labor for removal upon completion is included.

| Item | Description | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|---|---|---|---|---|---|---|---|
| 00001 | Electrical | 1.000 | Lump sum | $25,861.00 | 0.00% | $0.00 | $25,861.00 |
| 00002 | Fee 10% | 1.000 | Lump sum | $2,586.00 | 0.00% | $0.00 | $2,586.00 |

Qwest 0007

| | |
|---|---|
| **Unit Cost:** | $28,447.00 |
| **Unit Tax:** | $0.00 |
| **Lump Sum:** | $0.00 |
| **Lump Tax:** | $0.00 |
| **Total:** | $28,447.00 |

**NOTE: PLEASE RESPOND NO LATER THAN 1/29/01**

| | |
|---|---|
| **APPROVAL:** Builders Group Technologies | **Qwest Communications** |
| By: | By: |
| Jam N. Maniscalco | Eric Bradford |
| Date: 1-22-01 | Date: |

Builders Group © Cox, Tia

JAN 23 '01 08:35                          01/18/2006    10:00AM

(INSIDE PLANT)



# CHANGE ORDER



| | | |
|---|---|---|
| **Contract No.:** 008349 | **C. O. #:** | 00-8349-03 |
| **Project:** 60 Hudson St., New York, NY (20ᵗʰ Flr) | **Project No.** | 20132.15956.33019 |
| **Contractor:** Builders Group Technologies | **Date:** | February 1, 2001 |

**Description of change:**
This change order is written to increase Contractor's scope of performance and scope of supply for the installation of four (4) BDFBs attached to Fibernet's DC power plant.

Reference Contract Order 008349, effective November 15, 2000. Incorporated by reference and made a part herein is Attachment No. 1, which delineates changes to the original Scope of Work per Qwest narrative. Also incorporated by reference is Attachment No. 2, which provides a detailed breakdown of pricing.

**Increased GMP Amount:**            **$43,587.11**

*Note: All applications for payment must be accompanied with appropriate back-up.*

**Reason for change:**
The work referred to on this Change Order was done per Qwest Engineering and Operations.

**Contract Price Summary:**
**Previous Total Contract Amount (GMP):** ....................................................    $1,620,784.00
**Increase/Decrease per this Change Order:** ...................................    $43,587.11
**Revised Total Contract Amount (GMP):** ....................................    $1,664,371.11

*Note:* The total above includes stipulated Contractor Fee.

*ALL TERMS AND CONDITIONS OF THE ORIGINAL CONTRACT REMAIN UNCHANGED*

APPROVED AND ACCEPTED:                              Qwest 0008

| Qwest Communications Corp. | Builders Group Technologies |
|---|---|
| Company | Contractor |
| By    *T Reilly* | By    *[signature]* |
| Thomas T. Reilly   *2/1/01* | James Maniscalco    *2-6-01* |
| Director, Contracts & Procurement | Project Manager |
| Name/Title    Date | Name/Title    Date |

\\qdeq_cmx1\constr\contracts\master_contracts\d_build\builders\changes\00-8349-03.doc Page 1 of 1          (Rev. 8/00)

Contract No. 008349
Change Order No. 00-8349-03

60 Hudson St. / New York City
# Attachment No. 1

---

## Scope of Work

Qwest 0009

I:\CONTRACTS\MASTER_CONTRACTS\D_build\Builders\Changes\attach1pg.doc

01/18/2006   10:00AM

## Scope of Work – 60 Hudson, New York, NY
## DC Power Plant Installation and Associated Upgrades
Project #: 20132.15956.33019

### Attachments
Documentation:
Qwest – Scope of work – see below

Drawings:
Qwest Space Planning Drawings #417200001

### Scope of Work
This Scope of Work is for installation of 4 new BDFBs connected to FiberNet DC Power.
Installation of necessary ladder rack and cabling.

1. Coordinate delivery of materials with building management.
2. Install 4 BDFBs per Qwest drawing attached.
3. Core drill holes through floor to the FiberNet space as designated on the attached drawing.
   Sleeve holes with conduit and cement in place.
4. Provide fire stopping in conduit once power cables are in place.
5. Supply all necessary ladder racking.
6. Lace and install all materials in compliance with Telcordia Standards.
7. Clean site to ensure project is presentable for customer.

**Qwest 0010**

Contract No. 008349
Change Order No. 00-8349-03

60 Hudson St. / New York City
# Attachment No. 2

Price Breakdown

Qwest 0011

I:\CONTRACTS\MASTER_CONTRACTS\D_build\Builders\Changes\attach1pg.doc

01/18/2006   10:00AM

JAN 18 2006 12:25 FR                          TO 813033911859        P.12/28

# BUILDERS GROUP TECHNOLOGIES

*Construction Management*

*General Contracting*

*Consulting*

January 10, 2001

Mr. Eric D. Bradford
**Qwest Communications**
13952 Denver West Parkway
Building #53
Golden, CO  80401

RE:     **DC Power - Fibernet
60 Hudson Street
BG Job # 00-122**

Dear Mr. Bradford:

We herewith submit our proposal in accordance with your request of 1/5/01 and e-mails of March 27, 29, 31 and April 12th and drawing from the e-mail of March 21, 2000, for the installation of DC Power from Fibernets space on the 19th floor to the Qwest BDFB's located on the 20th floor.

1)  Core drill two (2) five (5") inch holes through the existing floor slab of the 20th floor.
2)  Install cable ladder from the point of entry of DC Power cables to the existing cable ladder.
3)  Install cable ladder to connect the second tier of cable tray, to feed the BDFB's (25'-0"=/- of tray).
4)  Accept and install and Bolt down (4) BDFB's supplied by Qwest.
5)  Route sixteen (16) DC Power cables from the hole in the slab to the BDFB's.
6)  Terminate the DC cables on the Qwest's BDFB's only in accordance with Qwest's standards.
7)  Fire stop the new penetration upon completion of the installation of the DC Power cables.
8)  Provide an asbuilt drawing with dimensions for the layout of the equipment.

| | |
|---|---|
| 07-80000B | Fire Stopping |
| 16-00000B | Electrical |
| 01-00000B | General Conditions |
| | Investigation |
| | Labor/Clean up |
| | Supervision |
| | **Total** |

**Total**                    **$ 43, 587.11**

**\* All work was completed on a time and material basis and billed accordingly.**

<u>Notes/Clarifications</u>:

1 – All DC cables to be ready and available at the hole within the slab by Fibernet's contractor.
2 – All DC power cable, cable ladder, BDFB's and required hardware to be supplied by Qwest.
3 – All work to be completed no later than Monday April 3, 2000.

I would like to take this opportunity to thank you for your consideration of our services.

Your written acceptance will constitute an agreement between us.

Very truly yours,
**BUILDERS GROUP TECHNOLOGIES**

James J. Manescalco
Project Manager

cc:     File

Qwest 0012

JAN 18 2006 12:25 FR                          TO 813033911859      P.13/28

(INSIDE PLANT)



**CHANGE ORDER**


COPY

| | | | |
|---|---|---|---|
| **Contract No.:** | 008349 | **C. O. # :** | 00-8349-02 |
| **Project:** | 60 Hudson St., New York, NY | **Project No.** | 20132.15956.33019 |
| **Contractor:** | Builders Group Technologies | **Date:** | January 18, 2001 |

**Description of change:**

Reference Design/Build, Part 2, Contract Order 008349, effective November 15, 2000 and revise GMP to include premium time paid for 3rd shift to expedite schedule, furnish & install 5 TVSS's on 5 AC rectifier panels, and one EPO system on 2 existing generators and labor for preventative maintenance.

**Increased GMP Amount:**      **$256,894.00**

**Reason for change:**
Changes were necessary to meet Qwest requirements for AC power panels supplying DC plants and to meet revised schedule.

**Contract Price Summary:**

**Previous Total Contract Amount (GMP):** ......................................  $1,363,890.00

**Increase/Decrease per this Change Order:** ............................  $256,894.00

**Revised Total Contract Amount (GMP):** ................................  $1,620,784.00

*Note:* *The total above includes stipulated Contractor Fee.*

*ALL TERMS AND CONDITIONS OF THE ORIGINAL CONTRACT REMAIN UNCHANGED*

**APPROVED AND ACCEPTED:**

| Qwest Communications Corp. | Builders Group Technologies |
|---|---|
| Company | Contractor |
| By | By |
| Thomas T. Reilly | James Maniscalco |
| Director, Contracts & Procurement | Project Manager |
| Name/Title            Date | Name/Title            Date |

**Qwest 0013**

i:\contracts\master_contracts\d_build\builders\changes\00-8349-02.doc          Page 1 of 1          (Rev. 8/00)

01/18/2006   10:00AM

JAN 18 2006 12:25 FR                                            TO 813033911859        P.14/28

(INSIDE PLANT)


*ride the light*
**Qwest.**

# CHANGE ORDER

| | | | |
|---|---|---|---|
| **Contract No.:** | 008349 | **C. O. # :** | 00-8349-01 |
| **Project:** | 60 Hudson St., New York, NY | **Project No.** | 20132.15952.33019 |
| **Contractor:** | Builders Group Technologies | **Date:** | January 9, 2001 |

**Description of change:**

Reference Design/Build, Part 2, Contract Order 008349, effective November 15, 2000. Revise the GMP Contract Amount per this Change Order to cover costs associated with Contractor's labor, general conditions, insurance, tax, expenses, contractor fee and increased time on site. Incorporated by reference and made a part herein is Attachment No. 1., which delineates Qwest's changes to the original Scope of Work.

**Increased GMP Amount:    $11,637.00**

**Reason for change:**
Changes were necessary to assure FM-200 compliance in Qwest space, and to allow fire extinguishing system to operate successfully.

**Contract Price Summary:**

Previous Total Contract Amount (GMP): ................................................. $1,352,253.00

Increase/Decrease per this Change Order: ............................................... $11,637.00

Revised Total Contract Amount (GMP): ................................................. $1,363,890.00

*Note: The total above includes stipulated Contractor Fee.*

*ALL TERMS AND CONDITIONS OF THE ORIGINAL CONTRACT REMAIN UNCHANGED*

APPROVED AND ACCEPTED:

| Qwest Communications Corp. | Builders Group Technologies |
|---|---|
| Company | Contractor |
| By _TTReilly_ | By _(signature)_ |
| Thomas T. Reilly  1/9/01 | James Maniscalco |
| Director, | Project Manager |
| Contracts and Procurement | |
| Name/Title            Date | Name/Title            Date |

**Qwest 0014**

i:\contracts\master_contracts\d_build\builders\changes\00-8268-01.doc        Page 1 of 1        (Rev. 8/00)

01/18/2006   10:00AM

Contract No. 008349
Change Order No. 00-8349-01

60 Hudson St. / New York City
# Attachment No. 1

Qwest 0015

I:\CONTRACTS\MASTER_CONTRACTS\D_build\Builders\Changes\attach1pg.doc

01/18/2006   10:00AM

**Scope of Work – 60 Hudson**
**Door & Hardware Replacement**
**Contract #: 008268**
**Project #: 20132.33004**
**Facilities Contact: Erik Bradford (303) 445-7137**
**Job Site: New York, NY**
**Site Address: 60 Hudson**
**Date: 5.29.00**

1. Remove and dispose of (4) existing doors and hardware.
2. Furnish and install (4) new doors and required hardware in existing frame that meet FM200 requirements.
3. Coordinate all work with building management.
4. Verify compliance with FM200 standards and provide documentation of same.
5. Repair hardware forcibly removed from the installed door in the Collocation Room after new door was installed.

1

Qwest 0016



*ride the light*

# Qwest.

## CONTRACT ORDER NO. 008349
### PROJECT NO. 20132.15953.33019

Effective November 15, 2000 Qwest Communications Corporation, ("Company") and Builders Group Technologies ("Contractor") hereby agree that Contractor shall perform the following Construction Work for Qwest pursuant to all terms and provisions under the terms of Master Construction Agreement No. BZ 980026.

### Part 2: Construction - (60 Hudson, New York, NY)

**Description of Construction Work:** Connect to the new electrical service from the new power vault to the existing power risers and required switchgear, all in accordance with the attached Scope of Work. (Attachment No.1).

**Guaranteed Maximum Price:** $ 1,352,253.00 (inclusive of Contractors Fee at 10 % - see Attachment No.2 for price breakdown).

**Location of Project:** 60 Hudson – New York, NY.

**100% Performance and Payment Bond required :** Yes ☐,, No ☒,

**Liquidated Damages:** Yes ☒, No ☐, Amount: $5,000.00/day

**Start of Construction:** November 15, 2000

**Substantial Completion Date:** December 15, 2000

**Specifications:** Incorporated by reference and attached hereto are the following documents:

- Attachment No. 1 -          Scope of Work

- Attachment No. 2 -          Price Breakdown of GMP

- Attachment No. 3 -          Schedule

- Attachment No. 4 -          Contractor Allowances and Clarifications

- Attachment No. 5 -          Qwest Planning and Design Criteria Manual (6/12/00) (already in your possession)

- Attachment No. 6 -          Communications and Invoicing Instructions

- Attachment No. 7 -          Submittal Requirements

Qwest 0017

01/18/2006   10:00AM

JAN 18 2006 12:25 FR                                    TO 813033911859      P.18/28



## CONTRACT ORDER NO. 008349
### PROJECT NO. 20132.15953.33019

**THIS PAGE INTENTIONALLY LEFT BLANK**

**Qwest Representative:**      Erik Bradford

**APPROVED AND ACCEPTED:**

| Qwest Communications Corp. | Builders Group Technologies |
|---|---|
| Company | Contractor |
| By _T. Rew /g_ | By |
| Thomas T. Reilly    1/2/01 | James Maniscalo |
| Director, Contracts & Procurement | Project Manager |
| Name/Title         Date | Name/Title         Date |

Qwest 0018

01/18/2006   10:00AM



**CONTRACT ORDER NO. 008349**
PROJECT NO. 20132.15953.33019

THIS PAGE INTENTIONALLY LEFT BLANK

**Qwest Representative:**     Erik Bradford

**APPROVED AND ACCEPTED:**

| Qwest Communications Corp. | | Builders Group Technologies | |
|---|---|---|---|
| Company | | Contractor | |
| By | | By | |
| Thomas T. Reilly | | James Maniscalo | |
| Director, Contracts & Procurement | | Project Manager | |
| Name/Title | Date | Name/Title | Date |

01/18/2006   10:00AM

Contract No. 008349
**Attachment No. 1**
Scope of Work

**Qwest 0020**

CONSTRUCTION SCOPE OF WORK
BUILDERS GROUP
60 HUDSON
NEW YORK, NEW YORK

I.    DESCRIPTION OF THE PROJECT

The proposed modification of the Qwest Communications site at 60 Hudson is to connect
to the new electrical service from the building's new power vault to the existing Qwest
Communication power risers, and required switch gear.

II.    SCOPE OF WORK

1.  Completion date will be 12/15/00.

2.  All construction work shall be in accordance with all local, State, and National code
    requirements that are applicable.

3.  Construction of new Electrical Service tie in from vault to existing Qwest
    Communication power risers.

4.  Installation of new switchgear for permanent power. Switchgear to be located in the
    new vault location designated by Williams Real Estate.

4.  Preparation and submission of Architectural, Structural, and Engineering drawings as
    required for building owner review and approval.

5.  Preparation and submission of Architectural, Structural, and Engineering drawings as
    required for New York Building Department and Landmarks Conservation Society.

6.  Field survey of existing conditions as required.

7.  Probing as required for construction of conduit routings.

8.  Preparation and provision of As-Built drawings to client in CD format at the
    conclusion of the project.

Drawing:

Highland Associates Drawing Project # 2000-458  Dated: 10/25/00  Drawing #: E-1
Highland Associates Drawing Project # 2000-458  Dated: 10/25/00  Drawing #: E-2
Highland Associates Drawing Project # 2000-458  Dated: 10/25/00  Drawing #: E-3
Highland Associates Drawing Project # 2000-458  Dated: 10/25/00  Drawing #: E-4

Qwest 0021

**Contract No. 008349**
**Attachment No. 2**
**Guaranteed Maximum Price Breakdown (GMP)**

Qwest 0022

JAN 18 2006 12:26 FR                    TO 813033911859    P.23/28

## Qwest Communications Corp. - Price Breakdown for GMP

60 Hudson Permanent Power Connection

| From: | To: |
|---|---|
| James Maniscalco | Mr. T. T. Reilly - Contracts Mgr. |
| One Wall Street Court | Qwest Communications Corp. |
| New York, NY 10005 | 13952 Denver West Pkwy, Bldg. 53 |
| | Golden, CO 80401 |

| Item No. / Division No. | Description | Amount | Comments |
|---|---|---|---|
| | **Construction Trades / Subcontractors** | | |
| 1000 | Survey | $0.00 | |
| 2000 | Site Work | $7,664.00 | |
| 3000 | Concrete | $13,104.00 | |
| 4000 | Masonry | $15,146.00 | |
| 5000 | Metals | $0.00 | |
| 6000 | Wood & Plastics | $5,029.00 | |
| 7000 | Thermal and Moisture Protection | $0.00 | |
| 8000 | Doors & Windows | $0.00 | |
| 9000 | Finishes | $10,604.00 | |
| 10000 | Specialties | $3,744.00 | |
| 11000 | Equipment | $0.00 | |
| 12000 | Furnishings | $0.00 | |
| 13000 | Special Construction | $0.00 | |
| 14000 | Conveying Systems | $0.00 | |
| 15000 | Mechanical | $0.00 | |
| 16000 | Electrical | $1,046,750.00 | |
| 17000 | Security Systems | $0.00 | |
| | Miscellaneous | $4,000.00 | |
| | Subtotals: | $1,106,041.00 | |

Qwest 0023

GMP Format Spreadsheet Perm Power.xls                    01/18/2006   10:00AM

JAN 18 2006 12:26 FR                              TO 813033911859        P.24/28

## Qwest Communications Corp. - Price Breakdown for GMP

60 Hudson Permanent Power Connection

| From: | | To: |
|-------|---|-----|
| James Maniscalco | | Mr. T. T. Reilly - Contracts Mgr. |
| One Wall Street Court | | Qwest Communications Corp. |
| New York, NY 10005 | | 13952 Denver West Pkwy, Bldg. 53 |
| | | Golden, CO 80401 |

| Item No. / Division No. | Description | Amount | Comments |
|---|---|---|---|
| A. | Contractor's General Conditions - | $123,280.00 | |
| B. | Contractor's On-site Construction Support - | $0.00 | |
| C. | Insurances & Bonds - | $0.00 | |
| | Subtotals: | $1,229,321.00 | |
| D. | Contractor's Fee ( 10 %) | $122,932.10 | |
| E. | Allowance for Taxes (direct pass-thru at cost) | $0.00 | |
| F. | Allowance for Transportation & Subsistence (direct pass-thru at cost) based on the Per Diem Rate listed below - | $0.00 | |
| G. | Per Diem Rate - $ | N/A | |
| | Total GMP Value: | $1,352,253.10 | |
| Submitted by: | | | |
| By: | (Name) | | |
| | (Title) | | |
| | (Date) | | |

Qwest 0024

GMP Format Spreadsheet Perm Power.xls

01/18/2006    10:00AM

JAN 18 2006 12:26 FR                                    TO 813033911859    P.25/28

**Contract No. 008349**
**Attachment No. 3**
Schedule

Qwest 0025

01/18/2006   10:00AM

Contract No. 008349
Attachment No. 4
Contractor Allowances and Clarifications

Qwest 0026

November 3, 2000

Mr. Erik D. Bradford
**Qwest Communications**
13952 Denver West Parkway
Building #53
Golden, CO  80401

                          RE:    **Electrical Service Tie-in
                                 60 Hudson Street
                                 Guaranteed Maximum Price
                                 BG Project # 00-322/101161**

Dear Mr. Bradford:

We herewith submit our Guaranteed Maximum Price (GMP) in accordance with your request for the
modifications to tie-in the existing electrical service riser to the new Con-Ed vault as follows:

1)  All work in accordance with the design intent as per Builders Group Technologies Design Services
    Proposal #101161 dated 10/17/00, for the Electrical Service work only.
2)  Furnish and install a new 4000 AMP switchboard with one (1) 3000 AMP and two (2) 800 Amp switch's
    as manufactured by the Atlas Switch Company.
3)  Switchboard fabrication to commence upon receipt of Purchase Order and Final Design fabrication shall
    take 3 weeks.
4)  Furnish and install conduit and or trough and wire from the new Con Ed switch to the new switchboard.
5)  Furnish and install conduit and wire from the building existing service switch to the new switchboard.
6)  Furnish and install conduit and wire from the new switchboard to the existing riser for the 20th floor.
7)  Furnish and install conduit and wire from the new switchboard to tie in the space on the mezzanine.
8)  Disconnection of existing transformer and switchboard as required, equipment to remain on site.
9)  Furnish and install two (2) empty conduits from the new switchboard to the basement for future use.
10) Advisory board drawings and short circuit study is included.
11) Provide labor and materials for all necessary patching, painting and firestopping as required for all
    electrical work.
12) Furnish and install one (1) concrete housekeeping pad for new switchboard.
13) Removal/replacement of ceiling and ductwork in the ceiling on the first floor at corridor from Con Ed
    vault.

**Qwest 0027**

01/18/2006   10:00AM

**Page 2**

**Electrical Service Tie-in**
**Guaranteed Maximum Price**
**BG Project # 00-322**

**NOTES:**

A.  All electrical roughing shall be completed 12/15/00.
B.  A short utility shutdown will be required to transition from the temporary to the permanent service. This shutdown will be coordinated by Builders Group and will meet Qwest Maintenance Window requirements. MOPs for this work will be written by Builders Group.
C.  All routing of conduit was figured per the walk through meeting on 10/25/00.
D.  All new work shall be in compliance with the original project specifications from the 20th floor design drawings prepared by Highland Associates.
E.  Builders Group Technologies has priced this project as a Capital Improvement (New York State Only). Included sales tax on material only.
F.  Builders' Group Technologies has not been advised of subcontractors and has based this proposal on utilizing vendors of our choice.
G.  Builders Group Technologies has not included costs related to the Qwest Planning and design criteria manual in this GMP.

This Guaranteed Maximum Price does not include: Restoration or relocation of existing conditions not unforeseen, filing/expediting/Permit fees, Utility fees, Architectural/Engineering drawings or fees, Elevator or building service charges, Structural work if required, delays due to leasing or Building approval.

I would like to take this opportunity to thank you for your consideration of our services.

Your written acceptance will constitute an agreement between us.

Very truly yours,
**BUILDERS GROUP**


James J. Maniscalco
Project Manager



**ACCEPTED & AGREED**

BY: _____

DATE: _____

cc:     File
        G. J. Figliolia
        A.  Henderson
        Estimating

01/18/2006    10:00AM

Case 1:07-cv-05464-DAB     Document 15-4     Filed 10/31/2007     Page 29 of 74

Contract No. 008349
**Attachment No. 5**
Qwest Planning & Design Criteria Manual

Qwest 0029

Contract No. 008349
**Attachment No. 6**
Communications and Invoicing Instructions

Qwest 0030

Contract No. 008349
Appendix A

## Communications and Invoicing Instructions

### 1.  CORRESPONDENCE AND TRANSMITTALS -

All correspondence relative to the Contract shall refer to the Contract number and the Project location and be addressed as follows:

1.1    Contractual Correspondence -

All contractual correspondence, including but not restricted to terms, conditions, price adjustments or any change to the price or scope of the Contract, shall be addressed to:

> Qwest Communications Corp.
> 13952 Denver West Parkway, Bldg. 53
> Golden, CO 80401
> Attention: Manager, Contract Administration

1.2    Technical Correspondence -

All technical correspondence or project related correspondence shall be addressed to:

> Qwest Communications Corp.
> 13952 Denver West Parkway, Bldg. 53
> Golden, CO 80401
> Attention:  Facilities Construction Manager - (Project name / number)

### 2.    INVOICING INSTRUCTIONS -

All invoices shall be submitted with necessary support documentation and shall properly identify the contract and project numbers. Invoices shall be submitted in duplicate and in the case of progress billings, include an Application for Payment (Attachment No. 1).  All invoices shall be sent to the following address:

> Qwest Communications Corp.
> 13952 Denver West Parkway, Bldg. 53
> Golden, CO 80401
> Attention:  Facilities Project Accounting - Ms. Sandra Kehoe

In all cases, invoices must include the appropriate form of Lien Waiver. If invoicing for progress/partial payment, a Progressive Lien Waiver shall be attached to each invoice. If invoicing for release of retainage, a Final Lien Waiver shall be attached to the final invoice.

### 3.    ATTACHMENTS -

> **Attachment No. 1 -** Application For Payment - *(to be used for progress billings)*
> **Attachment No. 2 -** Contractor's Progressive Affidavit, Release and Lien Waiver
> **Attachment No. 3 -** Contractor's Final Affidavit, Release and Lien Waiver

Qwest 0031

L:\TTReilly\Facilities - Invoice Forms\Comm_Invoice.doc

JAN 18 2006 12:47 FR                         TO 813033911859        P.04/35

# Attachment No. 1
## Application For Payment

Qwest 0032

01/18/2006   10:25AM

JAN 18 2006 12:47 FR    TO 813033911859    P.05/35

# Qwest Communications Corp. - Application for Payment

Page No. 1

From (Contractor): [redacted]

To:
Qwest Communications Corp.
13952 Denver West Pkwy.
Building 53
Golden, CO 80401

Project Name:
Project No.
Contract No.

Invoice No.
Invoice Date:

* * * * * * * THIS APPLICATION * * * * * * * *

| Item No. | Description of Work | Scheduled Value | Previous Applications | Work Completed this Period | Stored Materials to Date | Total Completed to Date | Percent (%) Complete | Balance to Finish | Retainage |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Test | 10.00 | 0.00 | 1.00 | 1.00 | 2.00 | 0.20 | 8.00 | 0.20 |
| 2 | Test | 20.00 | 0.00 | 2.00 | 1.00 | 3.00 | 0.15 | 17.00 | 0.30 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| **Subtotals:** | | 30.00 | 0.00 | 3.00 | 2.00 | 6.00 | 0.17 | 26.00 | 0.50 |

Qwest 0033    01/18/2006    10:25AM

JAN 18 2006 12:47 FR                    TO 813033911859              P.06/35

# Qwest Communications Corp. - Application for Payment

**From (Contractor):** [redacted]

**To:**
Qwest Communications Corp.
13522 Denver West Pkwy.
Building 53
Golden, CO 80401

| Project Name: | | Invoice No. | [redacted] |
| Project No. | | Invoice Date: | [redacted] |
| Contract No. | [redacted] | | |

• • • • • • • THIS APPLICATION • • • • • • • •

| No. | Change Orders | Scheduled Value | Previous Applications | Work Completed this Period | Stored Materials | Total Completed | Percent (%) Complete | Balance to Finish | Retainage |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Test | 25.00 | 0.00 | 15.00 | 5.00 | 20.00 | 0.80 | 5.00 | 2.00 |
| 2 | Test | 35.00 | 0.00 | 20.00 | 5.00 | 25.00 | 0.71 | 10.00 | 2.50 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 | 0.00 |
| | Subtotals: | 60.00 | 0.00 | 35.00 | 10.00 | 45.00 | 0.75 | 15.00 | 4.50 |
| | Totals: | 90.00 | 0.00 | 38.00 | 12.00 | 50.00 | 0.59 | 40.00 | 5.00 |

| | |
|---|---|
| Original Contract Amount: | 30.00 |
| Revisions by Change Order: | 60.00 |
| Revised Contract Amount to Date: | 90.00 |
| Total Completed and/or Stored to Date: | 50.00 |
| Total Retainage: | 5.00 |
| Total Earned Less Retainage: | 45.00 |
| Less Previous Certificates for Payment: | 45.00 |
| Current Payment Due after Retainage: | 0.00 |
| Previous Retainage: | 5.00 |
| Current Billing's Retainage: | 0.00 |
| Total Retainage: | 5.00 |
| Gross Payment Due (For Qwest use only): | 50.00 |

**Contractor Certification:**

By: _____

Title: _____

Date: _____

Req_paymt.xls

Rev.(1) - 11/99

Page No. 2

Attachment No. 2
Contractor's
Progressive Affidavit,
Release And Lien Waiver

Qwest 0035

CONTRACTOR'S
PROGRESSIVE AFFIDAVIT, RELEASE AND LIEN WAIVER

This Progressive Affidavit, Release And Lien Waiver is entered into with reference to that certain construction contract between the undersigned Contractor and Qwest Communications Corporation for construction related to installation of a telecommunications conduit system.

From: _____ (the "Contractor").

To: Qwest Communications Corporation (the "Owner").

Project: _____ (the "Project").

Location of the Project: _____

_____.

Construction Contract: _____

_____ (the "Contract").

The undersigned, being first duly sworn, deposes and says that:

1.    The Contractor is the contractor for the performance of certain work and the furnishing of certain materials or supplies pursuant to the Contract.

2.    This instrument is delivered for the purpose of inducing and in consideration of the sum of $ _____ (CURRENT AMOUNT REQUESTED AND ALL AMOUNTS PAID TO DATE, LESS RETAINAGE), and is subject only to collection of any check given as payment of such sum. Further, Contractor acknowledges that upon receipt of this payment, Contractor has been paid for all of the work performed under the Contract (which includes all labor and materials furnished by or through Contractor for, on or to the Project) through the date hereof.

3.    Contractor for itself, its successors, and on behalf of all persons able to claim through or under Contractor: (a) waives, relinquishes and releases all liens and right or claim to a lien for labor or materials furnished in the construction, improvement, alteration or repair involved in performance under the Contract through _____, except for retainage; (b) agrees to save Owner harmless from all liability, costs and expenses, including reasonable attorneys' fees, to: (1) discharge (by bond or otherwise) or to defend suit to enforce, any mechanics' or materialmen's lien, claim to or right of action for such lien, which may be filed as a result of or in connection with any work performed at or materials furnished to the Project by, through or under Contractor or the Contract through the date hereof; and (2) satisfy any claims or demands arising out of, due or which may be made, directly or indirectly attributable to the Contract, any work performed or supplies furnished thereunder, or in furtherance of the construction or completion of the Contract work; and (c) hereby releases the present and any future Owner, the Project and any lender who may now or hereafter have a security interest therein, from all claim, right or action, liability and lien which might accrue under the laws of the State in which the Project is located in connection with the Contract or any labor or materials furnished by or through Contractor for, on or to the Project through the date hereof.

**Qwest 0036**

4.    Contractor warrants and represents:  (a) all materials delivered to the Project by or for Contractor are for use therein only; (b) the Contractor has fully paid for all labor, materials, and all other expenses which Contractor has provided for the Project through _____; (c) title to all work, material and equipment covered by such payment, whether or not incorporated in the Project, has passed to the Owner, free and clear of all liens and claims (including, without limitation, mechanics' or materialmen's liens and claims), security interests or encumbrances (hereinafter all referred to as "liens"); (d) all taxes applicable to the materials furnished and the work performed under the Contract have been fully paid; and (e) all laborers, mechanics, subcontractors, materialmen and suppliers for all work done and for all materials, machinery, equipment, fixtures, tools, scaffolding and appliances furnished for the performance of the Contract and for any other indebtedness connected therewith for which the Owner might be responsible have been paid in full.

5.    It is acknowledged that the designation of the above Project constitutes an adequate description of the property and improvements for which the undersigned has received consideration for this instrument.

6.    The undersigned individual warrants and represents that he is duly authorized and empowered to sign and execute this instrument on behalf of the Contractor for which he is signing.

Dated this _____ day of _____, 2000.

CONTRACTOR:

_____

By: _____
Name: _____
Title: _____

STATE OF _____    )
                                      ) ss.
COUNTY OF _____    )

The foregoing instrument was subscribed and sworn to before me this _____ day of _____, 2000, by _____ as _____ of _____, a _____.

WITNESS my hand and official seal.
My commission expires: _____

_____
Notary Public

(SEAL)

Qwest 0037

01/18/2006   10:25AM

Attachment No. 3
Contractor's
Final Affidavit,
Release And Lien Waiver

---

Qwest 0038

## CONTRACTOR'S
## FINAL AFFIDAVIT, RELEASE AND LIEN WAIVER

This Final Affidavit, Release And Lien Waiver is entered into with reference to that certain construction contract between the undersigned Contractor and Qwest Communications Corporation for construction related to installation of a telecommunications conduit system.

From: _____ (the "Contractor").

To:      Qwest Communications Corporation (the "Owner"),

Project: _____ (the "Project").

Location of the Project: _____

_____.

Construction Contract: _____

_____ (the "Contract").

The undersigned, being first duly sworn, deposes and says that:

1.       Contractor is the contractor for the performance of certain work and the furnishing of certain materials or supplies pursuant to the Contract.

2.       This instrument is delivered in consideration of and for the purpose of inducing Owner to make final payment of $ _____, and is subject only to collection of any check given as payment. Contractor acknowledges that upon receipt of this final payment, Contractor has been paid for all of the work performed under the Contract (which includes all labor and materials furnished by or through Contractor for, on or to the Project).

3.       Contractor for itself, its successors, and on behalf of all persons able to claim through or under Contractor: (a) waives, relinquishes and releases all liens and right or claim to a lien for labor or materials furnished in the construction, improvement, alteration or repair involved in performance under the Contract; (b) agrees to save Owner harmless from all liability, costs and expenses, including reasonable attorneys' fees, to: (1) discharge (by bond or otherwise) or to defend suit to enforce, any mechanics' or materialmen's lien, claim to or right of action for such lien, which may be filed as a result of or in connection with any work performed at or materials furnished to the Project by, through or under Contractor or the Contract through the date hereof; and (2) satisfy any claims or demands arising out of, due or which may be made, directly or indirectly attributable to the Contract, any work performed or supplies furnished thereunder, or in furtherance of the construction or completion of the Contract work; and (c) hereby releases the present and any future Owner, the Project and any lender who may now or hereafter have a security interest therein, from all claim, right or action, liability and lien which might accrue under the laws of the State in which the Project is located in connection with the Contract or any labor or materials furnished by or through Contractor for, on or to the Project through the date hereof.

4.       Contractor warrants and represents: (a) all materials delivered to the Project by or for Contractor are for use therein only; (b) title to all work, material and equipment covered by such payment, whether or not incorporated in the Project, has passed to the Owner, free and clear of all liens

Qwest 0039

01/18/2006   10:25AM

and claims (including, without limitation, mechanics' or materialmen's liens and claims), security interests or encumbrances (hereinafter all referred to as "liens"); (c) all taxes applicable to the materials furnished and the work performed under the Contract have been fully paid; and (d) all laborers, mechanics, subcontractors, materialmen and suppliers for all work done and for all materials, machinery, equipment, fixtures, tools, scaffolding and appliances furnished for the performance of the Contract and for any other indebtedness connected therewith for which the Owner might be responsible have been paid in full.

5.    It is acknowledged that the designation of the above Project constitutes an adequate description of the property and improvements for which the undersigned has received consideration for this instrument.

6.    The undersigned individual warrants and represents that he is duly authorized and empowered to sign and execute this instrument on behalf of the Contractor for which he is signing.

Dated this _____ day of _____, 2000.

CONTRACTOR:

_____

By: _____
Name: _____
Title: _____

STATE OF _____        )
                           ) ss.
COUNTY OF _____       )

The foregoing instrument was acknowledged before me this ____ day of _____, 2000 by _____, as _____ of Contractor.

WITNESS my hand and official seal.

My commission expires: _____.

_____
Notary Public

Qwest 0040

01/18/2006   10:25AM

## SECTION 01300

## SUBMITTALS

## PART 1: GENERAL

### 1.01   DESCRIPTION

    A.    The Work specified in this Section summarizes the requirements for the submittal of documents to Qwest that are defined in these Specifications. It also describes the procedures for "supplemental" submittals.

## PART 2: PRODUCTS

### 2.01   SUBMITTAL SCHEDULE

    A.    The Contractor shall provide a submittal schedule within 14 days after Notice to Proceed. The Submittal Schedule shall be directly related to the schedule of tests, results of these tests, shall identify all the submittals and shall include the following information for each submittal item:

        1.    Specification section, contract article, or special condition

        2.    Specification Subparagraph

        3.    Item description/test

        4.    Date the submittal shall be submitted

        5.    Name of subcontractor or supplier

    B.    The submittal schedule shall be updated every two weeks by the Contractor and submitted with the progress payment request.

### 2.02   INITIAL SUBMITTAL

    A.    Each submittal document shall include a title block showing the following information:

        1.    Date of submittal and revision dates.

        2.    Contract title and number.

        3.    The names of the Contractor, subcontractor, supplier, manufacturer.

        4.    Identification of test.

        5.    Subject identification by contract drawing or specification reference.

Qwest 0041

B.  A company submittal documents with a transmittal form which shall contain the following information:

1.  Contractor's name, address and telephone number.

2.  Submittal number and date.

3.  Contract title and number.

4.  Supplier's, manufacturer's or subcontractor's name, address and telephone number.

5.  Identification of variations from contract documents.

6.  Contractor's stamp and signature certifying his review.

7.  Identification of submittal:

    a.  If the submittal is being made on a General Condition or Special Condition, reference the General or Special Condition number.

    b.  If the submittal is being made under a specification section, reference the specification number, paragraph number and subparagraph number.

    c.  If the submittal is being made under a drawing, reference the drawing(s) number, and revision.

C.  The Contractor shall at the time of the submission describe variations from the contract documents in writing, separate from the submittal document. Variations must be approved in writing by the Construction Manager. If the Construction Manager approves any such variation, an appropriate contract change order shall be issued except that, if the variation is minor and does not involve a change in price or in time of performance, a modification need not be issued, however written approval is still required. If a submission contains variations and the variation column is not marked on the transmittal form, it will not be considered for review and acceptance. Along with marking the transmittal as a variation, a description must be included which outlines all the differences including maintenance and utility services along with any cost savings from an item not containing the variation.

D.  Changes in accepted submittal documents will not be permitted unless those changes have been accepted, in writing, by Qwest.

E.  Contractor will maintain a submittal log to track the status of each submission to include the items contained in paragraph 202 A 1-5, and the action code.

Qwest 0042

## PART 3: EXECUTION

### 3.01    CONTRACTOR'S REVIEW

A.    The contractor shall review submittal documents, stamp and sign as
reviewed and approved as complying with contract documents prior to
submission to Qwest.

### 3.02    QWEST REVIEW

A.    Submittal documents will be reviewed by Qwest, the designer and the
Construction Manager for conformance to requirements of the contract
drawings and specifications.  Review of a separate item will not constitute
review of an assembly in which the item functions.  Qwest will withhold
approval if submittals that depend on other submittals not yet submitted.
Review and acceptance will not relieve the Contractor from his
responsibility for accuracy of submittals, for conformity of submittal
document to requirements of contract drawings and specifications, for
compatibility of described product with contiguous products and the rest
of the system, or for protection and completion of the contract in
accordance with the contract drawings and specifications.

B.    Qwest, the designer, and/or the Construction Manager will review the
submittal documents for general conformance with the contract
documents and mark the Action Code, sign and date the transmittal.

C.    The Action Codes have the following meanings:

1.    A-ACCEPTED is an approval, and means that the illustration and
description appears to conform to the respective requirements of
the contract documents.

2.    B-ACCEPTED AS NOTED is an approval, and means that the
illustration and description will conform to the respective
requirements of the contract documents after the changes in
recognition of the reviewer's comments.  Submittals so marked
need not be resubmitted.

3.    C-REVISE AND RESUBMIT means that the submittal is
unacceptable and must be revised and resubmitted.

4.    E-NOT ACCEPTED means that the submittal is not approved and
that a new submittal in accordance with the contract documents
shall be made.

5.    F-RECEIPT ACKNOWLEDGED means an item is received by the
Construction Manager but no review was made.  This mark is for
use in resubmitting items that were previously accepted as noted
and the Contractor has incorporated the notes and wants the
Construction Managers' staff to have the same material that the
Contractor's field staff is using.

**Qwest 0043**

3.03    CONTRACTOR'S RESPONSIBILITIES

    A.    Contractor's responsibility for errors and omissions in submittal documents and associated calculations is not relieved by the Qwest review, correction and acceptance of submittals.

    B.    Contractor's liability to Qwest, in case of variations in the submittal document from the requirements of the contract documents, is not relieved by Qwest's review and acceptance of submittals containing variations unless Qwest expressly approves the deviation in writing, in which Qwest describes the variation.

    C.    The Contractor shall maintain a file of all approved submittal documents at the worksite. The complete file of all approved submittal documents shall be turned over to Qwest with as-built documents at the end of the job.

    D.    Schedule impact due to resubmittal requirements is the responsibility of the Contractor.

3.04    REQUEST FOR INFORMATION (RFI)

    A.    Contractor shall submit to the designer and Qwest all design/construction clarifications, questions, or modifications for approval through the Request for Information (RFI). This request shall include as a minimum the basic site and contract information; contract/specification reference; a description with appropriate support documents of the request to include impact and costs.

    B.    RFI's will be numerically sequenced beginning with 001 and record of the submission will be maintained in a log which includes the date of submission; to whom; brief description and references and receipt of response and disposition. Copy of log will be maintained by the Contractor at a designated site location agreed upon by the Contractor and Construction Manager. A copy of the log will be submitted monthly in accordance with Section 01400, paragraph 103.D.

## PART 4: MEASUREMENT

4.01    METHOD OF MEASUREMENT

    A.    No separate measurement shall be made for work under this Section.

## PART 5: PAYMENT

5.01    METHOD OF PAYMENT

    A.    No separate payment will be made for work under this Section. The cost of the work described in this Section shall be included in the applicable unit price item, work order or lump sum bid item.

        END OF SECTION 01300

Qwest 0044

## SECTION 01400

## CONTRACTOR QUALITY CONTROL

## PART 1: GENERAL

1.01    DESCRIPTION

A.    This Section identifies the Quality Control activities to be performed during all phases of the contract by the Contractor.

B.    The Contractor shall have in place his Quality Control Program as necessary to ensure that all materials and work are completed in compliance with contract documents. The Contractor is solely responsible for Quality Control with exception to those tests and or audits that may be conducted by Qwest as defined in the contract documents. Contractor shall submit his Quality Control Program Manual to Qwest Construction Manager for review/information.

C.    Test schedules and/or testing requirements for materials used on this project are included in the technical specifications. Laboratory and field-testing identified in the technical specifications shall be conducted by an Independent Testing Agency (ITA) retained by the Contractor.

1.02    SUBMITTALS

A.    Refer to Technical Specification Section for submittal requirements.

B.    The Contractor shall submit a list of suppliers and subcontractors. This list shall include items to be supplied by each supplier and/or subcontractor and shall identify work to be performed by each subcontractor. The list shall be updated and resubmitted as required.

C.    Quality Control Plan

Within 10 days after Notice to Proceed, the Contractor shall submit for review and acceptance a Quality Control Plan. Acceptance by the Construction Manager does not relieve the Contractor of compliance with the contract requirements. The Contractor Quality Control Plan shall address the following as a minimum:

1.    Provide a general description of Quality Control monitoring to be performed until final acceptance by Qwest.

2.    The Contractor shall designate an employee as the Quality Control Manager qualified to perform quality control monitoring of the Work. The designated individual shall have the authority to direct work changes required to bring the Work into conformance with contract requirements including stopping non-conforming work in progress.

3.    The Quality Control Plan shall address each technical specification division's requirements for quality control. The Contractor shall identify each item requiring submittal and

**Qwest 0045**

approval/acceptance prior to installation of work. Also, the Contractor shall identify each item    work requiring testing by the independent testing agency.

4.  The Quality Control Plan shall address and establish controls and documentation format to ensure that items or materials that have been accepted through receiving inspection are used and installed. Identification and trace-ability shall be provided throughout all inspections, test activities and records. For stored items, provisions shall be made for the control of item/material identification, consistent with the expected duration and type of storage.

5.  Provide methodology of monitoring, testing and exercising of all equipment, valves and/or assemblies to ensure the Work installed is in proper working order.

6.  Provide emergency contact information including name, company, title, work phone number, home phone number and other means of contact. The Emergency Contact list shall include at least four individuals. The Emergency Contact list shall be maintained on a daily basis. In the event that there is any change in any of the information, the Contractor shall forward the updated list to the Construction Manager. The Emergency Contact list shall include the project number, project title and date of issue.

D.  Daily Quality Control Report shall be submitted weekly on the form included. The Contractor may add sheets of information to this form as required. The report shall address as a minimum the following: identify number of workers on site each day by trade; identify notifications and discussions with/by Qwest Construction Managers and other agency inspectors, identify quality of work placed that day and any deviations and/or corrections required to bring the Work into conformance with the contract. Daily reporting may not be computerized or typed. Only legible hand written reports on the approved form shall be accepted. Submit one copy via fax of the Daily Quality Control Report to the Construction Manager the Monday following the work. Contractor will maintain a copy of the report at the worksite. The report shall be signed by the Contractor's Quality Control Representative and the Contractor's Superintendent.

## 1.03    DOCUMENTATION

A.  The Contractor shall not change or alter approved submittals, procedures, specifications, drawings or any other pertinent documentation without the Construction Manager's written authorization.

B.  All records and documents that are quality related shall be prepared, identified and maintained by the Contractor and shall be made available to Qwest upon request. Records shall be protected from damage, deterioration or loss. A copy of the records and documents shall be maintained at the Work site at all times unless the Construction Manager has approved other locations in writing. Retention time for all quality records shall be not less than three years from date of Final Acceptance

Qwest 0046

ontract. No quality records shall be di sed of without Qwest approval.

C.     The Contractor shall maintain records at the actual worksite and at the Contractor's office to show the inspection status of materials and items installed in order to ensure that the required inspections and tests have been performed in a timely and correct manner.

D.     The Contractor shall provide documentation to Qwest verifying the condition of the site and progress of the contracted scope of work. This documentation is intended to verify incremental progress toward scheduled project completion in lieu of a full-time on-site Qwest Construction Manager. The submittal of shop drawings or product data samples required by contract is not governed by this section. Documentation shall consist of reports, logs and photographs listed below. Weekly project photographs shall be still photos annotated with site location, date/time, and a description of the photo as a minimum. Digital photos are preferred. Digital photos shall be furnished in JPEG format. Photos shall be delivered on compact disk (preferred) or 100 MB Zip disks, and one set of color prints. Contractor shall furnish all cameras, prints, and media for digital photos as part of in-scope costs. Photos will be submitted to Construction Manager on a weekly basis. Project documentation deliverables shall include as a minimum:

1.     Initial site condition report – photographs of site prior to start of renovation or construction. Narrative report required for conditions that would require out-of-scope work. Supplemental photographs may be requested by Qwest.

2.     Site progress report – narrative of construction progress with annotations, and photographs if required. Of particular interest are critical items that will be buried, encased in concrete or enclosed in walls. Report to be submitted daily.

3.     Contractor's logs – legible copies to be submitted monthly unless requested more frequently by Qwest. Includes submittal log, request for information log (RFI).

4.     Punchlists

5.     Manpower resource curve.

6.     Detailed schedules

## 1.04   INSPECTIONS AND TESTS

A.     Inspection and tests, conducted by persons or agencies other than the Contractor, shall not in any way relieve the Contractor of his responsibility and obligation to meet all specifications and the referenced standards. The Contractor's designated Quality Control Representative shall inspect the work and shall ensure that the work complies with the contract requirements prior to any requests for inspection or testing.

Qwest 0047

B.  When the specifications, laws, ordinances, rules, regulations or orders of a public agency having jurisdiction requ. the Construction Manager's surveillance of inspections or tests, the Contractor shall notify the Construction Manager of the place, date and time 48 hours prior to the inspection and/or test. The Contractor shall be responsible for notifying and requesting inspection by other agencies. Prior to request for other agency inspections, the Contractor shall meet and plan inspection times with the Construction Manager and/or the Construction Manager's designated representative.

C.  Special inspections or tests may be required by the technical specifications, Qwest, State and/or Federal Agencies in addition to those tests already performed. The Contractor shall notify the Construction Manager at least 48 hours in advance of the additional inspections or tests.

## 1.05    INSPECTION PLAN

A.  The Contractor shall utilize the following four-point inspection plan to ensure the conformance of the Work performed by the Contractor meets the requirements of the contract drawings and specifications, the referenced codes and standards and the approved submittals:

1.  PREWORK COORDINATION: Prior to the start of the construction work on the contract and prior to the start of work under each separate specification section and prior to the start of work where a change in a construction operation is contemplated by the Contractor and prior to a new subcontractor starting work, a coordination meeting will be held with the Contractor's Superintendent, Quality Control and Safety Representative(s), and the ITA representative. Supervisory, Safety and Quality Control, representatives of all applicable subcontractors will also attend. Notify Qwest Construction Manager of all meetings scheduled. The Construction Manager may or may not attend. The Contractor's Superintendent will chair the meeting. The purpose of the meeting is to ensure the Contractor's personnel have no misunderstandings regarding their safety and quality procedures as well as the technical requirements of the contract. The following items shall be presented and reviewed by the Contractor at the meeting:

a.  Contract requirements and specifications.

b.  Shop drawings, certifications, submittals and as-built drawings that may apply.

c.  Testing and inspection program and procedures.

d.  Contractor's Quality Control program.

e.  Familiarity and proficiency of the Contractor's and subcontractor's workforce to perform the operation to

Qwest 0048

JAN 18 2006 12:49 FR                         TO 813033911859      P.21/35

required workmanship stan⌐⌐rds including certifications of installers.

    f.    Safety and environmental precautions observed.

    g.    Any other prepatory steps dependent upon the particular operation.

    h.    The Contractor's means and methods for performing the work.

2.    COMPLETION INSPECTION: Forty-eight hours prior to the completion of an item or segment of work and prior to covering up any work, The Contractor will notify the Construction Manager who will verify that the segment of work is substantially complete, all inspection and tests have been completed and the results are acceptable. The purpose of this inspection is to allow further corrective work upon, or integral to, the completed segment of work. THIS IS NOT AN ACCEPTANCE INSPECTION. For items that are determined to be deficient, need correction or are non-conforming items, the Construction Manager and Contractor's Quality Control Representative will verify the correction of the deficient and/or non-conforming items prior to the start of the next operation.

3.    PRE-FINAL ACCEPTANCE INSPECTION: Prior to requesting a Pre-final Acceptance Inspection by Qwest, all work and operational systems to be inspected shall be satisfactorily completed, tested, and inspected by the Contractor and his QC Representative. The Contractor's written request for this inspection shall be made 72 hours in advance. With the request shall come a list of any known deficiencies and when they will be corrected. If the list is too large or contains too many significant items, in the opinion of the Construction Manager, no inspection will be held because of the incompleteness of the work.

The Construction Manager will schedule the Pre-Final Acceptance Inspection and will prepare a list of deficient items (punchlist) discovered during the inspection. If during the inspection the list become too large or too many significant items are on the list, the inspection will be canceled. After the inspection is completed, the Deficiency List will be transmitted to the Contractor for correction of the deficient items.

4.    FINAL ACCEPTANCE INSPECTION: After the Contractor has completed all items on the deficiency list (generated from the Pre-Final Acceptance Inspection) he shall request a Final Acceptance Inspection. The request shall be made in writing at least 72 hours in advance of the inspection. The Construction Manager, the design consultant, a representative of the funding agency (if applicable) and other interested parties will inspect the subject Work to ensure that all deficiencies have been satisfactorily

Qwest 0049

attended to and that no new defici    ies have appeared and that all systems are completely functional. Any outstanding or additional deficient items will be noted and handled per the requirements of the Pre-Final Acceptance Inspection noted above until the Work is acceptable to the Construction Manager.

### 1.06 SAMPLES

A.  The Contractor shall maintain at the worksite a copy of all samples submitted and accepted by Qwest. Samples shall be made available to the designer or the Construction Manager's designated representatives for review and comparison in the field. The Construction Manager prior to use on the project must accept all items and materials.

B.  The installed work will be compared to the samples and if any of the work is not of the same quality, material, finish, color, texture or appearance as the sample, that portion that is not the same will be considered defective and in non-conformance.

C.  Contractor selection of samples will only be considered if taken at random. The Contractor shall permit representatives of Qwest to witness the selection of samples. Inspection or tests of items or materials that fail shall be sufficient cause to terminate further inspections/test of the same brand, make or source of that product.

D.  The Contractor is obligated to correct any item deemed deficient.

## PART 2: PRODUCTS (NOT USED)

## PART 3: EXECUTION

### 3.01 REQUIREMENTS

A.  All materials required for the contract shall be new except where specified otherwise. The Construction Manager may elect to perform additional inspections and/or tests at the place of the manufacture, the shipping point or at the destination to verify conformance to applicable specifications. Inspections and tests performed by Qwest shall not relieve the Contractor from the responsibility to meet the specifications, nor shall such inspections/tests be considered a guarantee for acceptance of materials that will be delivered at a later time.

B.  The Contractor is obligated to correct or remove non-conforming materials, whether in place or not. If necessary, the Construction Manager will send written notification to the Contractor to correct or remove the defective materials from the project. If the Contractor fails to respond, the Construction Manager may order correction, removal and/or replacement of defective materials by others, in which case the Contractor shall bear all costs incurred by such actions.

C.  Materials accepted on the basis of a Certificate of Compliance may be sampled and inspected/tested by Qwest or its designer at any time. The fact that the materials were accepted on the basis of such certification

Qwest 0050

s⊦ᵃᴵl not relieve the Contractor of his respᵒⁿsibility to use materials that c_.⊿orm to the specifications.

D.  The Contractor shall impose upon his suppliers the same quality control requirements, including inspection of test procedures, as imposed upon him by the specifications and referenced standards. The Contractor shall apply appropriate controls, designed to ensure that all materials meet the requirements and specifications.

## Part 4: MEASUREMENT

4.01  METHOD OF MEASUREMNET

A.  No Separate measurement shall be made for work under this section.

## PART 5: PAYMENT

5.01  METHOD OF PAYMENT

A.  No separate payment will be made for work under this section. The cost of the work described in this Section shall be included in the applicable unit price item, work order or lump sum bid item. If Qwest is required to reinspect work or conduct a special test because a previous inspection, requested by the Contractor, showed that the work was defective or not in conformance, the Construction Manager or his authorized representative may deduct from the contract value the cost of re-inspection at the rate of $75.00 per man-hour.

**END OF SECTION 01400**

Qwest 0051

## SECTION 01402

### QUALITY ASSURANCE

## Part 1: GENERAL

### 1.01 DESCRIPTION

A. This Section identifies Qwest Inspection activities to be performed by the Qwest Construction Manager.

B. Inspection and tests, conducted by persons or agencies other than the Contractor, shall not in any way relieve the Contractor of his responsibility and obligation to meet all specifications and the referenced standards.

C. The inspection and approval of work by other agencies above does not constitute inspection or acceptance of work required by Qwest. Technical specifications may contain requirements more stringent than other code agency requirements.

## PART 2: PRODUCTS (NOT USED)

## PART 3: EXECUTION

### 3.01 MANUFACTURING AND FABRICATION INSPECTIONS

A. The Construction Manager may elect to perform additional inspections and/or tests at the place of the manufacture, the shipping point or at the destination to verify conformance to applicable specifications. Inspections and tests performed by Qwest shall not relieve the Contractor from the responsibility to meet the specifications, nor shall such inspections/tests be considered to be a guarantee for acceptance of materials that will be delivered at a later time.

B. The Construction Manager or his authorized representative may inspect at its source any material or assembly to be used in the work. Manufacturing plants may be inspected from time for time for the purpose of determining compliance with specified manufacturing methods or materials to be used in the Work and to obtain samples for testing and further inspection.

    a. The Construction Manager shall have the cooperation and assistance of the Contractor and the producer with whom the Contractor has contracted for materials.

    b. The Construction Manager shall have full access during scheduled production or warehousing working hours to parts of the plant that are concerned with the manufacture, production, storage or shipping if materials being furnished.

Qwest 0052

JAN 18 2006 12:50 FR                          TO 813033911859    P.25/35

    c.   Contractor shall arrange for adequate ffice or working space that can reasonably be needed for conducting a plant inspection. Office or working space shall be conveniently located with respect to the plant and/or warehouse as required by the Construction Manager.

C.    It is understood and agreed that Qwest shall have the right to re-test at Qwest's expense any materials which have been tested and accepted at the source of supply after it has been delivered to the site.

## 3.02  INSPECTIONS AND TESTS

A. It is understood and agreed that Qwest shall have the right to take samples and perform testing of samples at different intervals concurrent to the Contractor's testing program. The Contractor shall be issued a Nonconformance Report or a Remedial Action Request in the event Qwest tests fail.

B. Materials accepted on the basis of a certificate of compliance may be sampled and inspected/tested by Qwest or its designer at any time. The fact that the materials were accepted on the basis of such certification shall not relieve the Contractor of his responsibility to use materials which conform to the specifications.

C. Qwest inspection shall include but not be limited to Initial Inspection, Follow-up Inspection, Completion Inspection, Pre-Final Acceptance Inspection, and Final Acceptance identified in Technical Specifications Section 01400.

## 3.03  NONCONFORMING WORK AND MATERIALS

A. Remedial Actions Request (RAR) (see attached form)

The Construction Manager will request the Contractor to take remedial action when nonconforming work is discovered and/or when test results indicate nonconforming work.

The Construction Manager will document remedial action that cannot be taken immediately (the same day) by issuing a Remedial Action Request form to the Contractor.

Remedial Action Requests are appropriate when the affected element of work is in-progress and discrepancies can be rectified as the work proceeds. RAR's shall be written when work can be brought back into conformance with the contract documents.

Upon satisfactory completion of the remedial action, the Contractor shall transmit the RAR form with the Contractor's statement of action taken (including any applicable test results) to the Construction Manager. The Construction Manager will perform a follow-up inspection to verify the RAR has been satisfactorily completed. The RAR then will be closed.

B. NONCONFORMANCE REPORT (NCR) (See attached form)

A Nonconformance Report will be issued to the Contractor by the Construction Manager whenever there are violations of the terms of the contract which cannot be

Qwest 0053

immediately brought back into conformance, including materials received and/or items of the work found to be in nonconformance with contract requirements.

The Nonconformance Report form will describe the nature and extent of nonconforming elements and will include space for the Contractor's corrective action proposal, the designer's review of the Contractor's proposal, reinspection and/or verification of approved corrective rework and a space for the Construction Manager's disposition of the nonconformance matter. Copies of the Nonconformance Report, at each step of its processing (i.e. initial issuance to Contractor through final disposition), will be sent to the Construction Manager.

The disposition of nonconforming item/materials will be made by the Construction Manager.

3.04    The Contractor is obligated to correct any item deemed deficient.  Description of this corrective action will be submitted on Part II of the Nonconformance Report.

## PART 4: MEASUREMENT

4.01    METHOD OF MEASUREMENT

A. No separate measurement shall be made for work under this Section.

## PART 5: PAYMENT

5.01    METHOD OF PAYMENT

A. No separate payment will be made for work under this Section. The cost of the work described in the Section shall be included in the unit price item, work order or lump sum bid item.

Qwest 0054

**Receivir   Drop Shipments**

The general contractor will act as agent for Qwest in receiving drop shipments to the site. The equipment will ultimately be installed in the facility by either the general contractor or by a firm contracted to Qwest. The contractor shall sign for the shipment and provide storage that includes adequate security and protection from the elements. The contractor shall inventory all shipment and inspect for damage, documenting all discrepancies. After receiving the shipment, the contractor shall notify the Qwest construction manager and forward the original shipping documents and inspection reports to Qwest. Qwest will notify the general contractor when shipments can be expected. Any materials received and stored off site shall be stored in a bonded facility. For deliveries that require services not available on site to unload (such as cranes, forklifts, rigging services) and storage facilities, direct costs may be passed on to Qwest. Costs for services to unload equipment that will be used to immediately install the equipment will be born by the installation contractor.

Qwest 0055

# DAILY REPORT

PROJECT TITLE_____ _____, _____      DATE_____

PROJECT NO._____      REPORT NO._____SHEET NO.___ OF___

CONTRACTOR _____ ___ ___      INSPECTOR_____

CONTRACTOR'S WORKSHIFT_____      CONTRACT DAY NO_____ OF_____

WEATHER CONDITIONS_____      HIGH_____LOW_____

SITE CONDITIONS_____

| LABOR | WK FORCE | | ACTIVITIES THIS DATE INCLUDING SUBCONTRACTOR BY NAME: |
|---|---|---|---|
| QTY | TRADE | | |
| | FOREMAN | | |
| | CARPENTER | | |
| | LABORER | | |
| | IRONWORKER | | |
| | OPERATOR | | |
| | FINISHER | | |
| | PIPE FITTER | | |
| | PLUMBER | | |
| | ELECTRICIAN | | |
| | SURVEY | | |
| | MASON | | |
| | QC | | |
| | TOTAL | | |

| EQUPMNT | ON-SITE |
|---|---|
| QTY | TYPE |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

FILE NO._____ PREPARED BY_____

**Qwest 0056**

APPROVED BY_____

01/18/2006  10:25AM

## DAILY REPORT CONTINUATION

PROJECT TITLE_____DATE_____
PROJECT NO._____ SHEET NO._____ OF_____

FILE NO._____ PREPARED BY_____

APPROVED BY_____

**Qwest 0057**

01/18/2006  10:25AM

JAN 18 2006 12:50 FR                              TO 813033911859      P.30/35

# REMEDIAL ACTION REQUEST
### (SIDE 1)

CONTRACT TITLE _____        CONTRACT NO _____

CONTRACTOR _____        INSPECTOR _____

DAY/DATE/WORKSHIFT _____        REPORT NO _____ PG __ OF __

ATTENTION: _____        DATE: _____

PURSUANT TO INSPECTIONS CONDUCTED ON THIS DATE, YOU ARE HEREBY REQUESTED TO IMMEDIATELY PERFORM CORRECTIVE AND/OR REMEDIAL ACTIONS RELATIVE TO DEFICIENCIES DETECTED IN THE WORK, AS FULLY DESCRIBED BELOW:

DESCRIPTION OF WORK ELEMENTS REQUIRING REMEDIAL ACTIONS _____

_____

_____

_____

_____

_____

_____

CONTRACT REFERENCE(S) _____

_____

REINSPECTION TO VERIFY THAT YOUR REMEDIAL ACTIONS HAVE BEEN PERFORMED WILL TAKE PLACE ON _____

RECEIPT ACKNOWLEDGEMENT  ☐ IS, ☐ IS NOT, REQUIRED          BY _____

## FOLLOW UP

REINSPECTION REMARKS (If necessary, continue on reverse side) _____

_____

_____

                              BY _____ DATE _____

STATUS OF REMEDIAL ACTION REQUEST _____

_____

_____

FILE _____   BY _____ DATE _____

Qwest 0058          01/18/2006   10:25AM

# REMEDIAL ACTION REQUEST
### (SIDE 2)

CONTRACT TITLE _____        CONTRACT NO _____

INSPECTOR _____ DATE _____        REPORT NO _____ PG___ OF___

SUPPLEMENTARY REMARKS _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

                                                         BY _____

SKETCH (If Appropriate)

Qwest 0059

01/18/2006   10:25AM

# NOTICE OF NONCONFORMANCE

### (SIDE 1)

CONTRACT TITLE_____    CONTRACT NO: _____

CONTRACTOR _____    N/C REPORT NO_____ PG ___ OF____

ATTENTION: _____    DATE: _____

NOTICE IS HEREBY GIVEN THAT THE TERMS, MATERIALS AND/OR ITEMS OF THE WORK, AS FULLY DESCRIBED BELOW, WERE REVIEWED, INSPECTED AND/OR TESTED BY THIS OFFICE AND WERE FOUND TO BE NOT IN CONFORMANCE WITH THE REQUIREMENTS OF THE SUBJECT CONTRACT. YOUR IMMEDIATE ATTENTION AND CORRECTIVE ACTIONS ARE REQUIRED.

BE ALSO ADVISED THAT NO PAYMENT WILL BE MADE FOR WORK DEEMED TO BE IN NONCONFORMANCE WITH THE CONTRACT UNTIL SUCH TIME AS YOUR CORRECTIVE ACTIONS HAVE BEEN SUBMITTED, APPROVED AND PERFORMED: (SEE PAGE TWO FOR CORRECTIVE ACTION PROPOSAL, ACCEPTANCE AND PERFORMANCE FORM.

CONTRACT REFERENCE: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

CONTRACT REFERENCE: _____
_____
_____
_____
_____
_____
_____
_____
_____

## RECEIPT ACKNOWLEDGEMENT IS REQUIRED!

BY: _____

### Construction Manager

FILE: _____
CC:

RECEIPT BY: _____    DATE: _____

_____

JAN 18 2006 12:51 FR                                    TO 813033911859        P.33/35

# CORRECTIVE ACTION

(SIDE 2)

ATTENTION: _____                    N/C REPORT NO._____ PG____ OF ____

I.    PROPOSAL:    CONTRACTOR'S DESCRIPTION OF PROPOSED CORRECTIVE ACTION (use Attachment if necessary)

_____

_____

_____

_____

_____

_____

_____

_____

_____

PROPOSAL DATE_____                    PROPOSAL BY_____

II.    ACCEPTANCE: () DESIGN CONSULTANT, () Qwest , OR () OTHER. REVIEW OF CORRECTIVE ACTION PROPOSAL

_____

_____

_____

_____

_____

_____

_____

RESPONSE DATE_____                    RESPONSE BY_____

III.    PERFORMANCE:    FIELD INSPECTION REMARKS (Reference Inspection Report No.)

_____

_____

_____

_____

_____

INSPECTION DATE_____                    INSPECTION BY_____

# DISPOSITION

_____

_____

THE STATUS OF THE SUBJECT NONCONFORMING ITEM(S) AND OF PROPER CORRECTIVE ACTION(S) IS AS FOLLOWS:_____

_____

_____

_____

FILE_____                    BY_____

Qwest 0061                    Construction Manager
                              01/18/2006   10:25AM

## QWEST COMMUNICATIONS CORP.

### REQUEST FOR CHANGE ORDER
### BUILDING ENGINEERING & CONSTRUCTION (Inside Plant)
EXTERNAL DEDUCTIVE CHANGE ORDER
*(Information Necessary For Issuance of a Change Order)*

---

Contract No.          8349FB

Contractor Name:      Builders Group Vendor #159273

Project Location:     60 Hudson Street New York, NY

Project Nos. / Codes:      20132,15952,33019

Description of Change:          External deductive change order

---

Change Order Amount:    ($62,269.19)
Adjusted Contract Amount    $1,682,494.90

Reason for Change:          Construction costs came in less than original proposed cost. This is to close out open commitments in contract. We have received a final lien waiver & final billing from vendor.

**Method of Pricing:**  *(please check one)*

Lump Sum _____    T&M _____    Unit Price _____    Revised GMP ___X___    Other _____

**Changes to Schedule:**  *(please indicate any changes to Schedule / Completion Date)*      N/A

**Attachments:**  *(please include any applicable attachments, i.e., copy of Contractor's Quote, Drawings, etc.)*

**Approvals:**

| | | | |
|---|---|---|---|
| Requestor | Steve Townsley (303)445-7008 | | |
| | (Name - please print)     (Phone) | | (date) |
| Finance Mgr. | (Al Hannah ) | | (date) |
| Director | (Kevin Beck, Michael Reifeis, David Lee, as applicable ) | | (date) |
| V.P. Engineering | (Will Quinby's authorization on contracts over $100,000.00) | | (date) |

Form#01 ( Qwest ).doc                     Page 1 of 1

**Qwest 0062**

```
44200                    Contract Financial Inquiry      Thru Date 02/28/02
                                                         Amount. . . A
Contract No .   8349 FB 09013 60 Hudson St. New York, NY Subledger .
Supplier . .    159273              BUILDERS GROUP
```

| O P | Chg | Lin | Description Job Coding | Contract Amount | Billed Amount | Paid Amount | Retained Amount |
|-----|-----|-----|------------------------|-----------------|---------------|-------------|-----------------|
|     | 000 |     | Original               |                 |               |             |                 |
| _   |     | 001 | New York Me            | 1352253.00      | 1243215.22    | 1118593.69- | 124,321.53      |
|     | 001 |     | add'l work             |                 |               |             |                 |
| _   |     | 001 | New York Me            | 11,637.00       | 11,398.81     | 11,322.63-  | 76.18           |
|     | 002 |     | add'l work             |                 |               |             |                 |
| _   |     | 001 | New York Me            | 256,894.00      | 256,894.00    | 231,204.60- | 25,689.40       |
|     | 003 |     | add'l work             |                 |               |             |                 |
| _   |     | 001 | New York Me            | 43,587.11       | 43,587.11     | 43,587.11-  |                 |
|     | 004 |     | Add'l Work             |                 |               |             |                 |
| _   |     | 001 | New York Me            | 28,447.00       | 28,447.00     | 25,602.30-  | 2,844.70        |

```
Opt:  1=Audit Trail  F4=Details  F10=Contract Search   F12=Previous  F24=More
```

Qwest 0063

```
44200                    ▊ Contract Financial Inquiry ▊    Thru Date 02/28/02
                                                           Amount. . A
Contract No .    8349 FB 00013 60 Hudson St. New York, NY Subledger *
Supplier . .   159273           BUILDERS GROUP
```

```
O         Description    Contract        Billed          Paid        Retained
P Chg Lin Job Coding     Amount          Amount          Amount      Amount
  005     Add'l Work
      001 New York Me     51,845.98      51,845.98      46,661.38-    5,184.60

                        -----------    -----------    ------------   -----------
          Grand Total   1744664.09     1635388.12     1477271.71-    158,116.41
```

```
Opt:  1=Audit Trail F4=Details F10=Contract Search  F12=Previous  F24=More
```

Qwest 0064

JAN 18 2006 12:20 FR                         TO 813033911859      P.01/09



1801 CALIFORNIA STREET
SUITE 4600
DENVER, COLORADO 80202

December 11, 2002

Mr. James Maniscalco
Builders Group Technologies
One Wall Street Court, 10th Floor
New York, NY 10005

RE:    60 Hudson Street, New York, NY
       Qwest Project No. 20132

Dear Mr. Maniscalco:

Qwest currently holds $162,827.09 in retainage for Builders Group on Contract No. 00-8349 that cannot be released until all turnover documents and as-built drawings have been received by Qwest Corporate Real Estate. Qwest's Project Manager has repeatedly requested this information during the past 14 months, and Qwest has not received any documentation during this period. We will continue to hold these retention funds until such time that we receive all project documentation.

In addition, since we have not received any further project billing during the past 9 months, Qwest has assumed that all project billings on Contract No. 00-8349 have been submitted and paid. Qwest Accounts Payable does not have any pending invoices at this time. If Builders Group has any outstanding billing that has not been submitted against the remaining open contract amount of $62,169.19, Qwest Accounts Payable must receive this invoice no later than 5:00 pm MST on Friday, December 20, 2002. After this date, Qwest will close all open contract amounts and will not consider any further payments toward this contract.

If you have questions, feel free to call Steve Townsley, Corporate Real Estate Project Manager at 303.965.4246 or Bob O'Leary, Contract Manager at 303.707.8513.

Sincerely,

Steven R. Townsley, P.E.
Project Manager
Corporate Real Estate
Qwest Communications

SRT/srt

Qwest 0065

BG letter 121102.doc

01/18/2006   9:55AM

*REAL ESTATE DESIGN &*
*CONSTRUCTION*

*1801 CALIFORNIA*
*SUITE 4600*
*DENVER, CO. 80202*

# FAX COVER SHEET

**Date:** 12/11/02

**Pages including cover sheet:** 2

**TO:**

Builders Group

James Maniscalco

**FROM:**

Steve Townsley

**Phone:** 212.635.0760

**Fax:** 212.981.0329

**Phone:** 303.965.4246

**Fax:** 303-896-5116

**CC:**

**CC:**

60 Hudson letter attached

for your response.

SRT

# Qwest 2

*Spirit of Service*

01/18/2006   9:55AM

Qwest 0066

JAN 18 2006 12:20 FR                    TO 813033911859      P.03/09

** JOB STATUS REPORT **         AS OF  DEC 11 2002 14:21    PAGE. 01
                                       QWEST

     JOB #906

       DATE  TIME          TO/FROM        MODE  MIN/SEC  PGS  STATUS
001  12/11  14:20        912129810329     EC--S  00'18"  002    OK

---

**REAL ESTATE DESIGN &**          # FAX COVER SHEET
**CONSTRUCTION**

**1801 CALIFORNIA**               Date: 12/11/02
**SUITE 4600**
**DENVER, CO. 80202**             Pages including cover sheet:  2

TO:                               FROM:

BUILDERS GROUP                    STEVE TOWNSLEY

JAMES MANSCALCO

Phone: 212.685.0760               Phone: 303.965.4246

Fax: 212.981.0329                 Fax: 303-896-5116

CC:                               CC:


60 HUDSON LETTER ATTACHED

FOR YOUR RESPONSE.


SRT


# Qwest.

*Spirit of Ser* 01/18/2006  9:55AM

Qwest 0067

JAN 18 2006 12:21 FR                          TO 813033911859    P.08/09

Page 1 OF 1

| Date | Invoice No. | Reference | Gross | Credit | Net |
|------|-------------|-----------|-------|--------|-----|
| 062801 | 99-194-003 | Retainage | 76.18 | | 76.18 |
| 070601 | 00322-CON | INV: 00322-CON #004 | 8,702.33 | | 8,702.33 |
| 070601 | 00322-CON | INV: 00322-CON #004 | 5,184.60 | | 5,184.60 |
| 021202 | 00-322 CON | INV: 00-322 CON#005R1 | 4,710.68 | | 4,710.68 |

| | | | | |
|---|---|---|---|---|
| Vendor: | BUILDERS GROUP | | Total: | $18,673.79 |
| Vendor ID: | 159273 | | Check No.: | 963711 |
| Message: | | | Check Date: | 06/16/03 |

— Remove check along this perforation —

| QWEST | | | | |
|-------|--|--|--|--|
| Qwest. *Spirit of Service* | QWEST<br>5325 ZUNI ST., RM 728<br>Denver, CO 80221 | TRLR LOC<br>963711 | BANK OF AMERICA<br>BANK OF AMERICA, N.A.<br>ATLANTA, GEORGIA | CHECK NO.: 963711<br>CHECK DATE: 06/16/03<br>84-1278<br>611<br>***VOID AFTER 90 DAYS*** |

| PAY: Eighteen Thousand Six Hundred Seventy Three Dollars and 79 Cents | $18,673.79 |
|---|---|

To The Order Of    **BUILDERS GROUP**
**ONE WALL STREET COURT**
**NEW YORK NY 10005**

*Janet K. Cooper*
Authorized Signature

⑈"0000963711"⑈ ⑆061112788⑆ 32999948 16"⑈

**Qwest 0068**

01/18/2006  9:55AM

JAN 18 2006 12:21 FR                    TO 813033911859        P.09/09

Page 1 OF 1

| Date | Invoice No. | Reference | Gross | Credit | Net |
|------|-------------|-----------|-------|--------|-----|
| 012201 | 00-322-2-0 | INV: 00-322-2-001 | 38,060.63 | | 38,060.63 |
| 042701 | 00-322-2-0 | INV: 00-322-2-0003 | 2,844.70 | | 2,844.70 |
| 041001 | 00-322-2-0 | INV: 00-322-2-0002 | 77,558.57 | | 77,558.57 |
| 041001 | 00-322-2-0 | INV: 00-322-2-0002 | 25,689.40 | | 25,689.40 |

| | | | |
|---|---|---|---|
| Vendor: | BUILDERS GROUP | Total: | $144,153.30 |
| Vendor ID: | 159273 | Check No.: | 963717 |
| Message: | | Check Date: | 06/16/03 |

— Remove check along this perforation —

**Qwest** _Spirit of Service_    QWEST
5325 2UNI ST., RM 728
Denver, CO 80221

BANK OF AMERICA
BANK OF AMERICA, N.A.
ATLANTA, GEORGIA

963717    114,153.30
CHECK NO.: 963717
CHECK DATE: 06/16/03
64-1278
611

*VOID AFTER 90 DAYS*

PAY:  One Hundred Forty Four Thousand One Hundred Fifty Three Dollars and 30 Cents    **$144,153.30**

To The
Order Of    **BUILDERS GROUP**
ONE WALL STREET COURT
NEW YORK NY 10005

_Janet K. Cooper_
Authorized Signature

⑆0000963717⑆ ⑈061112788⑈ 32999948 16⑈

**Qwest 0069**

01/18/2006   9:55AM

*REAL ESTATE DESIGN &*
*CONSTRUCTION*

*1801 CALIFORNIA*
*SUITE 4600*
*DENVER, CO. 80202*

# FAX COVER SHEET

Date:  *8 – 21*

Pages including cover sheet:  *3*

TO:

*GARY GUERRERO*

FROM:  *STEVE TOWNSLEY*

_____        _____

_____        _____

Phone:                              Phone:

Fax :  *303. 707. 9465*            Fax: 303-896-5116

CC:                                 CC:

*Copy of Builders Group checks*
*as requested.*

*SRT*



# Qwest.

*Spirit of Service*

Qwest 0070

JAN 18 2006 12:21 FR                                    TO 813033911859    P.06/09

## Builders Group Technologies

**TRANSMITTAL**
**No. 00-322-00151**

115 Broadway
16th Floor                          Phone: 212 635-0760
New York, NY 10006

| | | | |
|---|---|---|---|
| PROJECT: | 00322-Qwest Communications - Variou | DATE: | 8/26/2003 |
| | 60 Hudson Street | REF: | Final Waiver 8349 |
| | New York, NY 10014 | | |
| TO: | Qwest Communications | | |
| | 5325 Zuni Street | JOB ID: | 101161 |
| | Room 766 | JOB NO: | 00-322 |
| | Denver, CO 80221 | | |
| | PHONE: 303 458-2005  FAX: 303 458-2796 | | |

ATTN:    Sandy Kehoe

| WE ARE SENDING: | SUBMITTED FOR: | ACTION TAKEN: |
|---|---|---|
| ☐ Shop Drawings | ☐ Approval | ☐ Approved as Submitted |
| ☐ Letter | ☐ Your Use | ☐ Approved as Noted |
| ☐ Prints | ☑ As Requested | ☐ Returned After Loan |
| ☐ Change Order | ☐ Review and Comment | ☐ Resubmit |
| ☐ Plans | | ☐ Submit |
| ☐ Samples | **SENT VIA:** | ☐ Returned |
| ☐ Specifications | ☑ Attached | ☐ Returned for Corrections |
| ☑ Other: waiver | ☐ Separate Cover Via:  fax (3 pages) | ☐ Bids Due: |

**Remarks:** See attached final lien waiver for contract 8349, as per your request. Please call with any questions. Thank you.

| Distribution To: | | | | |
|---|---|---|---|---|
| Contact | Company | Phone | Fax | E-Mail |
| Steve Townsley | Qwest Communications | 303 965-4246 | 303 896-5116 | stownsley@qwest.net |

CC: File (w/1)

Signed: _Louis Figliolia, Jr._

L_w_02a

Qwest 0071

01/18/2006   9:55AM

## CONTRACTOR'S
## FINAL AFFIDAVIT, RELEASE AND LIEN WAIVER

This Final Affidavit, Release And Lien Waiver is entered into with reference to that certain construction contract between the undersigned Contractor and Qwest Communications Corporation for construction related to installation of a telecommunications conduit system.

From:                    **Builders Group Technologies**         (the "Contractor").

To:        Qwest Communications Corporation (the "Owner"),

Project:                  **00-322 – Electrical Work**           (the "Project").

Location of the Project: _____**60 Hudson Street New York, NY**_____

Construction Contract: _____**8349**_____
                                                     (the "Contract").

The undersigned, being first duly sworn, deposes and says that:

1.        Contractor is the contractor for the performance of certain work and the furnishing of certain materials or supplies pursuant to the Contract.

2.        This instrument is delivered in consideration of and for the purpose of inducing Owner to make final payment of $ _____**162,827.09**_____, and is subject only to collection of any check given as payment. Contractor acknowledges that upon receipt of this final payment, Contractor has been paid for all of the work performed under the Contract (which includes all labor and materials furnished by or through Contractor for, on or to the Project).

3.        Contractor for itself, its successors, and on behalf of all persons able to claim through or under Contractor: (a) waives, relinquishes and releases all liens and right or claim to a lien for labor or materials furnished in the construction, improvement, alteration or repair involved in performance under the Contract; (b) agrees to save Owner harmless from all liability, costs and expenses, including reasonable attorneys' fees, to: (1) discharge (by bond or otherwise) or to defend suit to enforce, any mechanics' or materialmen's lien, claim to or right of action for such lien, which may be filed as a result of or in connection with any work performed at or materials furnished to the Project by, through or under Contractor or the Contract through the date hereof; and (2) satisfy any claims or demands arising out of, due or which may be made, directly or indirectly attributable to the Contract, any work performed or supplies furnished thereunder, or in furtherance of the construction or completion of the Contract work; and (c) hereby releases the present and any future Owner, the Project and any lender who may now or hereafter have a security interest therein, from all claim, right or action, liability and lien which might accrue under the laws of the State in which the Project is located in connection with the Contract or any labor or materials furnished by or through Contractor for, on or to the Project through the date hereof.

4.        Contractor warrants and represents: (a) all materials delivered to the Project by or for Contractor are for use therein only; (b) title to all work, material and equipment covered by such payment, whether or not incorporated in the Project, has passed to the Owner, free and clear of all liens and claims (including, without limitation, mechanics' or materialmen's liens and claims), security

c:\documents and settings\djfiolla\local settings\temporary internet files\olk7\lien_fnl.doc    Page 1 of 2

Qwest 0072

01/18/2006   9:55AM

JAN 18 2006 12:20 FR                    TO 813033911859    P.05/09
AUG.26.2003  11:06AM    NYC BUILDERS GROUP

interests or encumbrances (hereinafter all referred to as "liens"); (c) all taxes applicable to the materials furnished and the work performed under the Contract have been fully paid; and (d) all laborers, mechanics, subcontractors, materialmen and suppliers for all work done and for all materials, machinery, equipment, fixtures, tools, scaffolding and appliances furnished for the performance of the Contract and for any other indebtedness connected therewith for which the Owner might be responsible have been paid in full.

5.    It is acknowledged that the designation of the above Project constitutes an adequate description of the property and improvements for which the undersigned has received consideration for this instrument.

6.    The undersigned individual warrants and represents that he is duly authorized and empowered to sign and execute this instrument on behalf of the Contractor for which he is signing.

Dated this ____26th____ day of ____August____, 2003

                              CONTRACTOR:
                              Builders Group Technologies

                              By: _____
                              Name: Louis Figliolia III
                              Title:  Assistant Project Manager

STATE OF _New York_ )
                    ) ss.
COUNTY OF _New York_ )

The foregoing instrument was acknowledged before me this _26_ day of _August_ 2003 by _Louis Figliolia III_ as _PM_ of Contractor.

WITNESS my hand and official seal.

My commission expires: _July 6, 2006_

                              _____
                              Notary Public

                    DIANA CABRANES
                Notary Public, State of New York
                        No. 01CA6010008
                    Qualified in Richmond County
                Commission Expires July 6, 20_06_

c:\documents and settings\lfigliolia\local settings\temporary internet files\olk1\lien_fal.doc    Page 2 of 2

Qwest 0073

01/18/2006   9:55AM

# BUILDERS GROUP

*Construction Management*
*General Contracting*
*Design - Build*
*Consulting*

July 23, 2004

Qwest Communications
4650 Lakehurst Court
Dublin, OH 43016
Attention: Mr. Bob Bachmeier

RE: Our Project No. 00-322

Dear Mr. Bachmeier:

After an updated review of the above referenced project, our records show the following:

| | |
|---|---|
| Contract #1 - Contract Amount | 81,410.32 |
| Contract #2 - Contract Amount | 1,629,273.98 |
| Contract #3 - Contract Amount | 888,226.49 |
| Contract #4 - Contract Amount | 37,806.82 |
| Total Contract Amounts: | 2,636,717.61 |
| Total Amount Received by Builders Group To Date: | (2,604,397.51) |
| Current Balance Due Builders Group: | 32,320.10 |

The total amount of payments received was $2,604,397.51. Accordingly, there is an outstanding balance of approximately $32,320.10.

We would appreciate if this amount were remitted by return mail to my attention.

Very truly yours,
BUILDERS GROUP

George J. Figliolia
President

Qwest 0074