UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

BUILDERS GROUP LLC, d/b/a BUILDERS
GROUP TECHNOLOGIES,

                            Plaintiff,

             -against-

QWEST COMMUNICATIONS CORPORATION,

                        Defendant.

--------------------------------------------------------------------x

        :  Civil Action No.: 1:07-cv-5464(DAB)

        :  ECF Case

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ACTION AND COMPEL ARBITRATION

<div align="right">

**MOSES & SINGER LLP**
*Attorneys for Plaintiff*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
(212) 554-7800

</div>

On the Brief:

    Henry J. Bergman, Esq.
    Scott E. Silberfein, Esq.

649159v1  007568.0317

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ...................................................................................................................... 2

        POINT I.      QWEST RELIES ENTIRELY UPON AN UNENFORCEABLE
                     DOCUMENT ...................................................................................... 2

                     1.     Execution ........................................................................ 2

                     2.     The Statute of Frauds ...................................................... 4

                     3.     Completeness .................................................................. 5

        POINT II.     QWEST HAS FAILED TO FULFIL A CONDITION
                     PRECEDENT FOR THE ENFORCEMENT OF THE
                     ARBITRATION CLAUSE .................................................................. 5

        POINT III.    QWEST WAIVED ITS RIGHT TO ARBITRATION ............................ 6

        POINT IV.    THE ARBITRATION CLAUSE DENIES BG A MEANINGFUL
                     LEGAL REMEDY .............................................................................. 7

CONCLUSION ................................................................................................................... 8

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Contra Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995) ................................................................................................7

*Fisser v. International Bank*, 282 F.2d 231 (2d Cir. 1960) ..............................3, 4

*Genesco, Inc. v. T. Kakiuchi & Co., Ld*, 815 F.2d 840 (2d Cir. 1987) ................3

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995) ........................................................................................................6

*Matter of S&R Company of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80 (2d Cir. 1998), <u>cert dismissed</u>, 120 S. Ct. 629 (1999)..........................................6

## STATE CASES

*Cron v Hargro Fabrics*, 91 N.Y.2d 362 (1998)....................................................5

*D & N Boening Inc. v Kirsch Beverages, Inc.*, 63 N.Y.2d 449 (1984)................4

*Sheehy v. Clifford Chance Rogers & Wells, LLP*, 3 N.Y.3d 554 (2004)............4

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted by Plaintiff Builders Group LLC, d/b/a Builders Group Technologies ("BG") in opposition to the motion of Defendant Qwest Communications Corporation ("Qwest") to compel arbitration.

As will be shown, the arbitration clause upon which Qwest relies is part of an unsigned, incomplete copy of a general, construction-industry form of a master terms and conditions agreement (the "Master Contract") that Qwest cannot even connect to the particular project at issue.

As will be further shown, not only does the Master Contract fail to satisfy the most fundamental standards for enforceability, but even if this were not so:  (i) Qwest failed to serve the notice of demand for arbitration that the Master Contract requires before any right to arbitration may be invoked; (ii) Qwest otherwise appears to have waived any right to arbitration by removing this action from New York State Supreme Court; and/or (iii) the arbitration clause is so one-sided and oppressive in that it denies BG a meaningful legal remedy by permitting Qwest, a very large telecommunications monopoly serving the Western United States, to unilaterally choose the venue for the arbitration of a contract that was entirely made and performed in New York by a local contractor, BG.

For these reasons, as more fully detailed below, Qwest's motion should be denied in its entirety.

<center>**STATEMENT OF FACTS**</center>

The facts relevant to the opposition to Qwest's motion to stay action and compel arbitration are set forth in the accompanying Affidavits of Isaac Stareshefsky, sworn to on October 31, 2007 and Scott E. Silberfein, sworn to October 31, 2007.

<center>**ARGUMENT**</center>

<center>**POINT I.**</center>

<center>**QWEST RELIES ENTIRELY UPON AN UNENFORCEABLE DOCUMENT**</center>

Qwest has failed to submit evidence sufficient for this Court to conclude that this action should be stayed and arbitration compelled. First, the copy of the Master Contract (as well as the amendment threto) that Qwest has put before this Court is unsigned and unaccompanied by any proof that it ever was signed or is otherwise exempt from the New York Statute of Frauds, which requires signatures to an agreement such as the one at issue. Second, Qwest has not shown that the Master Contract is applicable to the construction project at bar. Third, Qwest has not ever submitted a complete copy of the Master Contract -- Exhibit B to the Affidavit of Robert Bachmeier is missing pages 5 to 37 and 41 to 43 -- it is relying on in support of the motion.

1.    **Execution**

Examination of Exhibit B to the Affidavit of Robert Bachmeier shows that although the signature page (page 44) has the names of the signatories printed upon it, the signature lines are blank. Nor has Qwest submitted an affidavit by someone with personal knowledge averring that BG and/or Qwest signed the purported Master Contract. Indeed, the purported Amendment to the Master Construction Agreement is also unsigned (Exhibit C to the Affidavit of Robert Bachmeier).

In 2005 BG was a party to a lawsuit in New York State Supreme Court entitled *Hugh O'Kane Electric Co., LLC v. GJF Construction Corp. d/b/a Builders Group LLC d/b/a Builders*

*Group Technologies and Westside Of NY Ltd.* (Index No: 603933/03) ("Hugh O'Kane action")

involving the 60 Hudson Street project. (Affidavit of Scott E. Silberfein, ¶ 2). In or about

December 2005, Qwest was served with a subpoena (the "Subpoena") to produce documents and

appear for a deposition in the Hugh O'Kane action. (Affidavit of Scott E. Silberfein, ¶ 2).

Mr. Bachmeier's lack of personal knowledge is confirmed by his deposition testimony in

the Hugh O'Kane action. For example, Mr. Bachmeier testified that he was not involved with

the negotiation of the contract or the work to be performed. (Bachmeier Dep., 18:25 - 19:12).

In fact, he first reviewed documents regarding the 60 Hudson Street project in response to the

Subpoena. (Bachmeier Dep., 19:13-23).

Qwest submits that the cases of <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, Ld, 815 F.2d 840

(2d Cir. 1987) and <u>Fisser v. International Bank</u>, 282 F.2d 231 (2d Cir. 1960) in support of the

legal proposition that an arbitration clause can be contained in an unsigned agreement. In fact,

these cases support BG's position.

First, in <u>Genesco</u>, unlike the case at bar, the party seeking to avoid application of the

arbitration clause, Genesco, had admittedly been party to numerous purchase orders and

confirmation notes with the initials or signature of a high-ranking officer. <u>Genesco</u>, 815 F.2d at

845. Each of these purchase orders and confirmation notes contained an arbitration clause. <u>Id</u>.

Accordingly, even though the specific agreement sued upon may not have been signed, the

Second Circuit found that "[b]ased on these exchanges and after a detailed review of the

voluminous evidentiary submissions, the district court found that Genesco had agreed to arbitrate

its disputes under both the signed and unsigned agreements with both the Kakiuchi defendants."

In sharp contrast, here Qwest is endeavoring to graft an arbitration clause onto the Contract

Order for the 60 Hudson project that **does not** in any way provide for arbitration and was signed more than two years after the alleged Master Contract,

Fisser is also inapposite. There, the Second Circuit declined to enforce an arbitration clause against an entity where it was not proven that that party was the alter-ego of the signatory to the agreement. Fisser, 282 F.2d at 241. In so doing, the Second Circuit acknowledged the need for the arbitration agreement to be valid under general principles of contract law and, only in such cases, could an arbitration clause be enforced. Thus, if the contract is otherwise invalid (as it is here; see infra), the arbitration clause is unenforceable.

2.      **The Statute of Frauds**

As Qwest concedes, whether a party is bound by an arbitration clause is determined under federal law, which embraces generally accepted principles of contract law. Fisser, 282 F.2d at 233. Under this body of law, the statute of frauds, as exemplified by section 5-701(a)(1) of New York's General Obligations Law, provides that an agreement is void if it is not in writing and subscribed by the party to be charged therewith when the agreement by its terms is not to be performed within one year from the making thereof." Sheehy v. Clifford Chance Rogers & Wells LLP, 3 N.Y.3d 554, 559-60 (2004)(internal citations omitted).

Here, the 60 Hudson Street project was not, and could not have been performed within one year. (See Affidavit of Isaac Stareshefsky ¶ 4). Indeed, Qwest would have this Court believe that the purported, incomplete Master Contract governed all of BG's projects with Qwest from the 1990s to the early 2000s. (Id.).

The intention of the statute of frauds is to thwart "fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury." D & N Boening Inc. v Kirsch Beverages, Inc., 63 N.Y.2d 449, 453 (1984). In so doing, the statute of frauds requires a written contract, such as the Master Contract, for an agreement that is not to be performed within

one year of its making.  See, e.g., Cron v Hargro Fabrics, 91 N.Y.2d 362, 367-368, (1998).

Accordingly, Qwest's attempt to rely on an unsigned Master Contract fails to satisfy the statute

of frauds.

### 3.    Completeness

Conspicuously absent from Qwest's submission are 36 pages of the Master Contract.

And, as related in the Affidavit of Isaac Stareshefsky, BG conducted a thorough search of its

records and files for the purported Master Contract which failed to yield either a signed copy

thereof or, indeed, any master contract resembling the fragmentary, unsigned document

submitted by Qwest.  (See Affidavit of Isaac Stareshefsky, ¶ 5).  Plainly, it is impossible to know

if there are any additional clauses that vitiate or modify the arbitration clause contained in

section 43.

Accordingly, Qwest's motion should be denied because it has not shown any binding

agreement to arbitration.

<div align="center">

**POINT II.**

**QWEST HAS FAILED TO FULFIL A CONDITION PRECEDENT FOR THE
ENFORCEMENT OF THE ARBITRATION CLAUSE**

</div>

Even if this Court were to determine that the purported Master Contract is valid, Qwest

has failed to perform the condition precedent in section 43(c) of the Master Contract (Exhibit B

to the Affidavit of Robert Bachmeier).  Inter alia, section 43(c) states that "if Qwest wishes to

submit any claim, dispute or other matter in question … Qwest *shall* file a notice of demand for

arbitration with the American Arbitration Association and with [BG]."  (Emphasis added.)

Qwest has not done so nor does it submit any evidence that it has done so.

Accordingly, Qwest's motion should be denied as premature at best and because, as shown below, Qwest's failure at this late date to have served the notice of demand for arbitration should be viewed as a waiver.

## POINT III.

## QWEST WAIVED ITS RIGHT TO ARBITRATION

Even if this Court were to determine that the purported Master Contract is valid, we submit that Qwest has waived any right it might have had to enforce the arbitration clause. Although there are no bright-line rules in determining if arbitration has been waived, the factors to be considered are "(1) the time elapsed from commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." Matter of S&R Company of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir. 1998), cert dismissed, 120 S. Ct. 629 (1999).

Here, Qwest was served with the summons and complaint on May 23, 2007. Instead of promptly moving to compel arbitration, Qwest removed the case from the Supreme Court of the State of New York on or about June 8, 2007. In so doing, and in delaying to seek to enforce an arbitration clause for more than two-and-a-half months, Qwest's "conduct has been largely inconsistent with its present assertion of its right to compel arbitration[1]." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20 (2d Cir. 1995)(Refusing to enforce arbitration clause where defendant delayed seven months in raising arbitration and failed to do so in any pleadings). Here, Qwest's delay, coupled with its attempts to settle this case while in the federal

---

[1] Indeed, Qwest has been aware of BG's claims herein for the collection of monies unpaid on a construction project since, at least, December 2005 when Qwest was served with a non-party subpoena in an action in the Supreme Court of the State of New York, New York County captioned *Hugh O'Kane v. Builders Group* regarding the 60 Hudson Street project.

forum (See Affidavit of Stephen R. Long), evidence Qwest's undeniable availment of the litigation process. See, e.g., Contra Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995) (initial selection of federal forum constitutes presumptive waiver, even absent prejudice to other party "beyond what is inherent in an effort to change forums in the middle . . . of a litigation").

## POINT IV.

## THE ARBITRATION CLAUSE DENIES BG A MEANINGFUL LEGAL REMEDY

If the Court were to determine that the Master Contract is valid and that Qwest has fulfilled condition(s) precedent without waiving its rights to arbitration, this Court should still decline to stay the action and compel arbitration because the purported agreement to arbitrate is unconscionable.

In what can be best described as a "heads I win tails you lose" clause, Qwest has the right to choose whether or not any claim brought by it or against it is to be arbitrated. This is so regardless of which party wishes to prosecute a claim.[2] Qwest also has the right to venue the arbitration in the least convenient location, an important consideration where a small company has a claim against a giant like Qwest. BG has no such right and is entirely at Qwest's mercy. See Sections 43(a), (b), (c) and (f). Accordingly, an intent to arbitrate BG's claims herein is not self-evident (as Qwest would like this Court to believe). We submit these clauses render BG's ability to seek relief pursuant to a contract that was entirely performed in New York virtually meaningless due to the expense and disruption of business involved in having to arbitrate where Qwest would venue the proceeding, i.e., Colorado.

---

[2] There is an exception from small claims aggregating to less than $5,000.00.

649159v3  007568.0317                              7

Although courts favor arbitration, the purported arbitration clause(s) are unfairly over reaching and should be denied enforceability in the interests of justice.

## CONCLUSION

For the foregoing reasons, BG respectfully requests that Qwest's motion to stay actions and compel arbitration be denied in its entirety.

Dated: New York, New York
       October 31, 2007

<div style="margin-left:40%;">

Respectfully submitted,
Moses & Singer LLP
*Attorneys for Plaintiff*

By: _____

Henry J. Bergman
Scott E. Silberfein
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Tel: 212-554-7800

</div>