UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BUILDERS GROUP LLC, d/b/a BUILDERS GROUP TECHNOLOGIES,

    Plaintiff,

-against-

QWEST COMMUNICATIONS CORPORATION,

    Defendant.

---

1:07-cv-5464 (DAB)

ECF Case

CIVIL ACTION

---

## REPLY BRIEF IN SUPPORT OF QWEST'S MOTION TO STAY ACTION AND COMPEL ARBITRATION

---

DRINKER BIDDLE & REATH LLP
140 Broadway
39th Floor
New York, New York 10003
(212) 248-3140
Attorneys For Defendant
Qwest Communications Corporation

On the Brief:

Stephen R. Long

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

    I.      The Master Contract is Part of the Parties' Agreement. ....................................... 4

    II.     The Arbitration Clause is Enforceable ................................................................ 5

          A.    The Statute of Frauds ................................................................................ 5

          B.    Unconscionability ...................................................................................... 6

    III.    The Arbitration Clause Was Not Waived. ........................................................... 7

    IV.    Plaintiff's Unilateral Decision to Sue Qwest Cannot Create a Failure of a Condition Precedent. ........................................................................................... 9

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**                                         **PAGE**

Blake v. Voight,
    134 N.Y. 69 (1892)......................................................................................6

Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,
    50 F.3d 388 (7th Cir 1995)..........................................................................8

Crabtree v. Elizabeth Arden Sales Corp.,
    305 N.Y. 48 (1953)......................................................................................5

Cron v. Hargro Fabrics, Inc.,
    91 N.Y.2d 362 (1998)(citation omitted) .....................................................6

Gillman v. Chase Manhattan Bank, N.A.,
    73 N.Y.2d 1 (1988)......................................................................................7

Klein v. Jamor Purveyors, Inc.,
    489 N.Y.S.2d 556 (2d Dep't 1985)..............................................................5

Kramer v. Hammond,
    943 F.2d 176 (2d. Cir. 1991).......................................................................7

Leadertex v. Morganton Dyeing & Finishing Corp.,
    67 F.3d 20 (2d Cir. 1995) ............................................................................8

Marks v. Cowdin,
    226 N.Y. 138 (1919)....................................................................................5

New Moon Shipping Company, Ltd. V. Man B&W Diesel AG,
    121 F.3d 24 (2d Cir. 1997)..........................................................................5

Rush v. Oppenheimer & Co.,
    779 F.2d 885 (2d Cir. 1985)........................................................................7

The Hillier Group, Inc. v. Torcon, Inc.,
    932 So. 2d 449 (Fla. App. 2 Dist. 2006) .....................................................9

**MISCELLANEOUS**

*Restatement (Second) of Contracts* §§205, 225 (1981) ...............................10

*Restatement (Second) of Contracts* §131 (1981) ..........................................5

*Restatement (Second) of Contracts* § 132 (1981) .........................................5

## INTRODUCTION

Defendant, Qwest Communications Corporation ("Qwest"), submits this reply brief in response to certain points raised in plaintiff's opposition and in further support of its motion to stay this action and compel arbitration.

The record on this motion is undisputed on these key points:

- Plaintiff does not deny the validity of Contract Order 8349 for the 60 Hudson Street project in question, which was signed by its duly authorized representative and countersigned by Qwest.

- Plaintiff does not deny that it had the intent, so clearly expressed in the Contract Order it signed, to incorporate by reference Master Construction Agreement BZ 980026 ("the Master Contract") into the signed Contract Order 8349.

- Plaintiff does not deny that the incorporated Master Contract provides for arbitration of this dispute.

The record is also clear, however, that plaintiff will say just about anything to perpetuate this action and avoid arbitration under its agreement. A prime example of this is plaintiff's argument that the excerpts of the Master Contract accompanying the motion are "incomplete." Opposition Brief ("Opp.") at Point I.3., page 5. Indeed, plaintiff argued that it is "impossible to know if there are any additional clauses that vitiate or modify the arbitration clause contained in section 43" of the Master Contract. Opp. at 5. The argument that plaintiff and the Court have been shortchanged and, perhaps, misled by omission of the "missing pages" is knowingly false. We provided plaintiff's counsel at his request with a complete copy of the Master Contract two weeks before the opposition was filed. See Reply Affidavit of Stephen R. Long ¶2-5 and Ex. 2. (hereinafter "Long Reply Aff. ¶__") If there were anything helpful to plaintiff in the "missing"

1

pages, it could have, and surely would have, appeared in the opposition. That plaintiff chose not to submit *any* other portions of the Master Contract exposes this argument for what it is.

In like fashion, plaintiff makes the unsustainable arguments that Qwest's removal of this case and talking to counsel about possible settlement constitutes a waiver of arbitration, Opp. at Point III, that despite submitting unrebutted proof of a signed agreement for the 60 Hudson Street project that incorporates the Master Contract by name and entirely, Qwest "cannot connect it to the project at issue," Opp. at 1, and that the Statute of Frauds bars enforcement of an agreement that is evidenced in a signed writing and which by its terms was capable of performance in far less than a year. See Reply Affidavit of Robert Bachmeier ¶10. (hereinafter "Bachmeier Reply Aff. ¶__").

Even more important than what plaintiff says is the critical point the plaintiff has omitted from its opposition. There is no mention anywhere in its submission of the doctrine of incorporation. This fundamental precept of contract law operates in this case to bring the Master Contract, which so far has been located only in unsigned form, into the signed Contract Order 8349 for the 60 Hudson Street project in its entirety, including its arbitration provisions. Plaintiff cannot, and does not, say otherwise.

## STATEMENT OF FACTS

The facts submitted on Qwest's reply to plaintiff's opposition are set forth in the accompanying Reply Affidavits of Robert Bachmeier and Stephen R. Long. Before turning to the legal arguments below, a brief summary of these facts is in order.

The parties' Master Contract and their Contract Order 8349 are fully integrated and expressly correlated documents. Bachmeier Reply Aff. ¶4, Ex. 1 §§4 and 5. Specifically, the Master Contract provides that certain contract documents including the Master Contract and all Contract Orders "shall comprise and represent the entire and integrated contractual agreement

2

between the Parties...." *Ibid*. Indeed, Section 5 of the Master Contract states the "Correlation and Intent" of the contract documents, specifying that they are "... complementary, and what is required by one shall be as binding as if required by all ...." *Ibid*. For this reason, the Master Contract is expressly incorporated by name and number into Contract Order 8349. Bachmeier Reply Aff. ¶5. See also Doc 7 at the top of page 1.

Qwest did nothing wrong in submitting excerpts of the parties' Master Contract. To the contrary, it was complying with this Court's electronic filing rules, which require the use of excerpts. Moreover, this was done on notice to Court and counsel. Long Reply Aff. ¶2. The implication in plaintiff's brief that it was handicapped in its opposition to this motion, see Opp. at 1, 2, 5 and Point I.3, is false. Plaintiff's counsel was provided with a complete and correct copy of the Master Contract two weeks before opposition was filed. Long Reply Aff. ¶¶5-6 and Ex. 1. In the same vein, Qwest did not "fail" to produce the Master Contract in response to the subpoena in the *O'Kane* litigation, as plaintiff alleges. Silberfein Aff. ¶4, n.3. SDNY Electronic Docket Document No. 15. (hereinafter "Doc __"). The Master Contract was not requested by the subpoena as modified by agreement between counsel for Qwest and O'Kane. Bachmeier Reply Aff. ¶¶6-9.

Qwest did not waive its right to arbitration by reason of "undeniable availment of the litigation process." Opp. at 7. Qwest timely removed this case to this Court on June 8, 2007. It engaged plaintiff and its counsel in a meeting to discuss settlement as soon as the meeting could be arranged. At that meeting, Qwest informed plaintiff that it would seek enforcement of the arbitration clause if a settlement agreement could not be reached. Qwest's next use of the "litigation process" was to file this motion on August 24, 2007. Long Reply Aff. ¶¶7-10, Ex. 3.

This case arises from a construction project that was completed in early 2003. Although the Master Contract provides that plaintiff may request arbitration of any claim or dispute it may

3

have with Qwest arising from the parties' agreement, plaintiff has never demanded arbitration or sought formal redress other than by filing this lawsuit. Bachmeier Reply Aff. ¶13, Ex. 1 §43(c). Perhaps this is because plaintiff has been paid in full for the subject work, as it averred under oath in its Contractor's Final Affidavit, Release and Lien Waiver, dated August 26, 2003. *Id.*, Ex. 4; see Bachmeier Reply Aff. ¶¶12-14.

For all of the reasons set forth below, this case should be sent to arbitration where the parties agreed it belongs.

## ARGUMENT

### I. The Master Contract is Part of the Parties' Agreement.

This is an action on the contract. While plaintiff's Complaint and its opposition to this motion fail to identify the contract on which it sues, the unchallenged record on this motion does. Effective November 15, 2000, plaintiff, by its Project Manager James Maniscalo, signed the parties' Contract Order 8349 for the 60 Hudson Street project. This document is attached to the initial Bachmeier Affidavit as Exhibit A. Doc 7.

The Opposition Brief says *nothing* about the signed Contract Order 8349.

This may be because Contract Order 8349 expressly incorporates by its complete name and in its entirety the parties' Master Contract, including the arbitration provisions of Section 43. Specifically, signed Contract Order 8349 states at the very top of page one that Qwest and Builders Group "hereby agree that Contractor [BG] shall perform the following construction work for Qwest pursuant to all terms and provisions under the terms of Master Construction Agreement No. BZ 980026." Doc 7, Ex. A.

It is axiomatic that a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt.

*New Moon Shipping Company, Ltd. V. Man B&W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997)(citing *4 Williston on Contracts §628* [3d ed. 1961]).

There is no evidence to suggest that anything else happened here. The Master Contract, including its arbitration clause, is part of the contract on which plaintiff has sued Qwest.

## II. The Arbitration Clause is Enforceable.

Plaintiff challenges the enforceability of the arbitration clause on two grounds -- one based on the Statute of Frauds, Opp. at Point I.2., and the other on the doctrine of unconscionability. Opp. at Point IV. Neither challenge has merit.

### A. *The Statute of Frauds*

The Statute of Frauds does not apply to this case. In the first place, as shown above, the Master Contract was incorporated in an agreement signed by both parties. This alone takes the parties' agreement to arbitrate outside the Statute of Frauds. *See, McKinney's General Obligations Law §5-701(a)(1); See also, Restatement (Second) of Contracts* §131 (1981). It is settled that the requisite writing "may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion." *Klein v. Jamor Purveyors, Inc.*, 489 N.Y.S.2d 556, 558 (2d Dep't 1985) (citing *Marks v. Cowdin*, 226 N.Y. 138, 145 (1919)); *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54-56, (1953); *See also, Restatement (Second) of Contracts* § 132 (1981).

Moreover, both the Master Contract and Contract Order 8349 are readily capable of performance within one year. (Although plaintiff's brief argues otherwise, Opp. at 4, this argument is based solely on the Affidavit of Issac Stareshefsky ¶4, Doc 14, which says and means no such thing.) As detailed in the Bachmeier Reply Affidavit, Master Contract Sections 32 and 33 set forth detailed provisions for termination for cause and for the convenience of the

parties. All of the termination events were capable of occurring immediately or on short notice. *Id.* at ¶8. Even a contract which by its terms is not to be performed within a year falls outside the statute of frauds where it is terminable by the parties within one year. *See, Blake v. Voight*, 134 N.Y. 69, 72 (1892). Indeed, Contract Order 8349 evidences plaintiff's own agreement that substantial completion of the 60 Hudson Street project would be achieved in a mere two months. *Ibid.* The law is quite clear that the Statute of Frauds encompasses only those contracts which, "by their own terms, 'have absolutely no possibility in fact and law of full performance within one year.'" *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 366 (1998)(citation omitted).

B.   *Unconscionability*

Plaintiff's brief cites no law to support the argument that the Master Contract's arbitration clause is unconscionable. Instead, plaintiff substitutes its counsel's opinions, which are couched in inflammatory language about the relative size of the parties; counsel calls Qwest a "very large telecommunications monopoly," Opp. at 1, and a "giant," Opp. at 7, while describing his client as a "small", "local" company whose business is confined to the New York metropolitan area. Opp. at 1, 7. All of this is incorrect and beside the point.

Qwest is hardly a "monopoly." It operates in a deregulated telecommunications services market that is highly competitive. That Qwest may be haled into court in any of the many places it does business explains the legitimate interest it has in controlling that process with tools such as the arbitration clause in question.

Nor is plaintiff some oppressed local outfit struggling to ply the construction trades within the confines of New York City. A quick stop at its website, www.buildersgroup.com, reveals that plaintiff sees itself as a national entity, having "expanded beyond [the New York] region to working throughout the country, now licensed throughout the United States" for clients

such as AT&T, Tiffany & Co., Merrill Lynch and Deutsche Bank. Bachmeier Reply Aff. at ¶11, Ex. 3

The biggest problem with plaintiff's unconscionability argument is that plaintiff has not made the requisite factual showing. Plaintiff's burden in this regard is well described in *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1 (1988). There the court reviewed the basic principles in play, observing that an unconscionable contract "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Id.* at 10. (citations omitted). The court stated that "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made – i.e., 'some showing of an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."'" *Ibid.* (citations omitted). Indeed, a finding of the absence of meaningful choice requires examination of the contract formation process and factors such as the size and commercial setting of the transaction, whether deceptive or high-pressure tactics were used, the use of fine print and the experience or education of the party claiming unconscionability. *Ibid.*

Plaintiff has shown none of this.

### III. The Arbitration Clause Was Not Waived.

Questions of waiver of the contractual right to arbitrate must be decided in the context of the case with a "healthy regard" for the strong policy promoting arbitration. *Kramer v. Hammond*, 943 F.2d 176, 179 (2d. Cir. 1991). While factual determinations are sometimes involved, the question of whether a party's litigation conduct amounts to waiver is purely a legal one. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). In this Circuit, and in the vast majority of others, "delay in seeking arbitration does not create a waiver unless it prejudices

the opposing party." *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F. 3d 20 (2d Cir. 1995).

It is curious that plaintiff would cite and rely on *Leadertex*. The facts of that case make it the antithesis of this one. In *Leadertex*, plaintiff filed suit in New York Supreme Court in July 1993. A month later, defendant removed the case to the district court and thereafter filed an answer and counterclaim. In September 1993, plaintiff amended the complaint, adding new claims and parties. In November 1993, defendant answered the amended complaint, raising numerous affirmative defenses, but not the right to compel arbitration. In October the court set a trial ready date of March 1994. Meanwhile discovery was pursued, including interrogatories and responses, document requests and responses and depositions. It was not until plaintiff moved for partial summary judgment that defendant, in January 1994, cross moved to compel arbitration. *Id.* at 24. On these facts, the finding of waiver is not surprising. [1]

In contrast to the cases cited by plaintiff, Qwest promptly removed this case to this Court and then did nothing in the judicial arena – it did not file one pleading, it made no other motion, it took not one scrap of discovery – before filing this motion. It did, however, attempt to speak with plaintiff and its counsel about settlement. And at this meeting, Qwest's informed plaintiff that if the case could not be settled promptly, Qwest's first step in the case would be to move for a stay and to compel arbitration. Reply Affidavit of Stephen R. Long ¶ 7-10.

---

[1] What is surprising is plaintiff's citation to *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir 1995), for the proposition (as phrased by plaintiff) that "selection of the federal forum constitutes presumptive waiver, even absent prejudice." Opp. at 7. *Cabinetree*, as the opinion itself notes, is in the distinct minority of federal circuit courts on the requirement of prejudice, *see id.* at 390, and it is squarely at odds with the Second Circuit on this important point.

Less surprising, however, is plaintiff's failure to present the facts of *Cabinetree*, which readily distinguish it from this case. Plaintiff filed suit in September 1993. Defendant timely removed the case. There any resemblance to this case ends. Instead, for the next eight months the parties engaged in extensive discovery, including the exchange of thousands of documents. Then, with a trial date set, the defendant "dropped a bombshell into the proceedings" moving to compel arbitration. *Id.* at 390. The trial court's denial of the motion to compel arbitration was affirmed.

Plaintiff has failed to show waiver.

### IV. Plaintiff's Unilateral Decision to Sue Qwest Cannot Create a Failure of a Condition Precedent.

In a nine-line throwaway argument, plaintiff invokes certain niceties of contract law, arguing that a formal demand for arbitration is a condition precedent to plaintiff's obligation to go to arbitration and, therefore, in the absence of a formal demand, this motion is "premature." Opp. at Point II. There is one undisputed fact that upends this position: Plaintiff unilaterally filed suit without prior notice to Qwest and without making its own request to arbitrate, as contemplated by the Master Contract. See Bachmeier Reply Affidavit, Ex. 1 at §43(c).

This race-to-the-courthouse argument received well earned short shrift in *The Hillier Group, Inc. v. Torcon*, Inc., 932 So.2d 449 (Fla. App. 2 Dist. 2006). There, as here, plaintiff, Torcon, filed suit notwithstanding an arbitration clause in the parties' construction contract. Once Hillier was brought into court, it promptly sought arbitration. The trial court found the right to arbitrate was waived because Hillier (which had filed no claim against Torcon) had "failed" to seek arbitration before Torcon decided to sue. Reversing, the appellate court said:

> We think that the adoption of the rule that a defending party waives the right to arbitration by failing to demand it prior to being sued would be unwise. Such a rule would enable one of the contracting parties to circumvent an arbitration provision by filing a lawsuit before the other party filed a demand, thereby encouraging the immediate resort to litigation as soon as a dispute became a glimmer on the horizon. This would upset the established expectations of contracting parties who have chosen arbitration as the preferred means of settling their disputes. *Id.* at 455.

This sound reasoning readily translates into the analytical framework of conditions precedent. It is settled that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement; accordingly when a party hinders the

performance of a condition precedent, that performance is excused. *Restatement (Second) of Contracts* §§205, 225 (1981).

## CONCLUSION

For the reasons set forth above, Qwest respectfully requests that the Court enter an order compelling arbitration and staying this action pending resolution of arbitration proceedings.

DATED:   New York, New York
         November 28, 2007

                              **DRINKER BIDDLE & REATH LLP**

                              By: s/ Stephen R. Long
                                   Stephen R. Long (SL4501)
                                   140 Broadway, 39th Floor
                                   New York, New York 10003
                                   (212) 248-3140
                                   Attorneys for Defendant
                                   Qwest Communications Corporation