(c)    The warranty provided in this paragraph shall be in addition to and not in limitation of any other warranty required by the Specifications and Drawings or otherwise prescribed by Law.

(d)    Contractor shall procure and deliver to Qwest, prior to Final Completion, any special warranties required by the Contract Documents.  Delivery by Contractor shall constitute Contractor's guarantee to Qwest that the warranty will be performed in accordance with its terms and conditions.

## 17.    MATERIAL AND EQUIPMENT SUBSTITUTIONS

(a)    If Contractor proposes to use material or equipment which, while suitable for the intended use, deviates in any way from the detailed requirements of the Contract Documents, Contractor shall notify Qwest of the nature of such deviation at the time the material is submitted for approval, and shall request approval of the deviation from the requirements of the Contract Order.

(b)    In requesting approval of deviations or substitutions, Contractor shall provide, if requested, evidence leading to a reasonable certainty, in the sole discretion of Qwest, that the proposed substitution or deviation will provide a quality or result at least equal to that required by the Contract Order.  If in the opinion of Qwest, the evidence presented by Contractor does not provide a sufficient basis for such reasonable certainty, Qwest may reject such substitution or deviation without further investigation.

(c)    The Specifications and Drawings associated with a particular Contract Order are intended to produce a structure of consistent character and quality of design.  All components of the Construction Work, including visible items of mechanical and electrical equipment will have been selected to have a coordinated design in relation to the overall appearance of the Construction Work.  Contractor shall judge the design and appearance of proposed substitutes on the basis of their suitability in relation to the overall design of the Construction Work, as well as for their intrinsic merits.  Contractor will not substitute or propose substitutes which in Qwest's opinion, would be out of character, obstructive or otherwise inconsistent with the character and quality or design of the Construction Work.  In order to prevent uncoordinated colors and finishes, Contractor shall, if required by Qwest, furnish the substitute material in any color, finish, texture or pattern which would have been available from the manufacturer originally specified, at no additional cost to Qwest.

(d)    Any additional costs or any loss or damage arising from the substitution of any material or any method for those originally specified shall be borne by Contractor, notwithstanding approval or acceptance of such substitutions by Qwest, unless such said substitutions were made at the request or direction of Qwest.

**18.    COST OF THE CONSTRUCTION WORK AND GMP.**

(a)    If Qwest engages Contractor to perform Construction Work, Qwest will reimburse Contractor for the Cost of the Construction Work, plus Contractor's Fee thereon.

(b)    Notwithstanding the foregoing, the maximum cost to Qwest for any Construction Work, including the Cost of the Construction Work and Contractor's Fee, will not exceed the GMP set forth in Part 2 of the Contract Order. The GMP for any Construction Work may only be increased or decreased by a Change Order. Provided that the GMP is not exceeded, any budgeted line item in the Cost of the Construction Work may be reallocated to another category.

(c)    The GMP for Construction Work on a particular Contract Order will be determined in the following manner:

(i)    Contractor shall prepare and submit to Qwest a proposal in response to Part 2 of Qwest's RFP that shall include, among other things, Contractor's estimated Cost of the Construction Work for such Contract Order increased by Contractor's Fee stipulated herein, the sum of which shall be the estimated GMP.

(ii)    The estimated GMP in Contractor's proposal in response to Part 2 of Qwest's RFP shall be made final by negotiation and then incorporated into Part 2 of the Contract Order.

(d)    Upon Final Completion of the Construction Work of each Contract Order and before Final Payment therefor, Contractor shall perform its final accounting and report to Qwest any differences between the actual Cost of the Construction Work plus Contractor's Fee, on the one hand, and the GMP amount applicable to such Contract Order, including any adjustments by Change Orders thereto, on the other. Contractor shall absorb any costs that exceed the GMP. All savings within the Cost of the Construction Work shall be credited to Qwest.

(e)    Since all Construction Work will be performed on a GMP basis, Contractor's Fee shall be increased by ten (10) percent of the Cost of the Construction Work for changes in the Construction Work that increase the GMP, and zero percent for changes in the Construction Work which reduce the GMP.

**19.    CONTRACTOR'S FEE.**

(a)    In consideration of the performance of Construction Work pursuant to any Contract Order, Qwest will pay Contractor in current funds as compensation for its Construction Work for each Contract Order a Contractor's Fee calculated as follows:

(i)    10 % of the costs which may be reimbursed under Subparagraph 20.(c)(i) through 20.(c)(viii).

(ii)    0% of the costs which may be reimbursed under Subparagraph 20.(c)(ix) and 20.(c)(x).

(b)    Upon execution of Part 2 of a Contract Order, Contractor's Fee shall be converted from a percentage expression to a stipulated sum within the GMP specified therein.

## 20.    COST OF THE CONSTRUCTION WORK.

(a)    Cost of the Construction Work shall mean costs necessarily incurred by Contractor for Construction Work pursuant to a Contract Order, and paid by Contractor, or paid by Qwest if Qwest is directly paying such costs on Contractor's approval and direction.  Such costs shall include the items set forth in Subparagraph 20.(c) and shall not include the items set forth in Subparagraph 20.(d).

(b)    Qwest will pay Contractor for the Cost of the Construction Work in addition to Contractor's Fee, as set forth in Paragraph 19.

**(c)    The following costs of Contractor shall be reimbursed by Qwest as part of the Cost of the Construction Work:**

(i)    Wages paid for labor in the direct employ of Contractor in the performance of the Construction Work at the job site under applicable collective bargaining agreements, or under a salary, hourly rate, or wage schedule agreed upon by Qwest and Contractor, and including such welfare or other benefits, if any, as may be payable with respect thereto.  Qwest will not be responsible for overtime paid to contractor's employees, except for hours exceeding forty (40) hours per week.

(ii)    Cost of all employee benefits and taxes for such items as unemployment compensation and social security, insofar as such cost is based on wages, salaries, or other remuneration paid to employees of Contractor, provided such costs are based on wages and salaries included in the Cost of the Construction Work under (i) above.

(iii)    Reasonable rental costs for necessary machinery and equipment used at the job site.  Rates and quantities of equipment rented shall be subject to Qwest's approval.

(iv)    Cost of removal of all debris from the job site.

(v)    The cost of all traffic control, erosion control, barricades, signs, weather protection and enclosures, security, snow removal, safety walks, stairs and enclosures, and temporary fencing, reasonably required for the protection of the public or the security or protection of the Construction Work and adjacent properties.

(vi)    All costs for permits, performance and other bonds if required by Qwest or a public authority and insurance applicable to the Construction Work as required by Paragraph 35.

(vii)    Payments made by Contractor to Subcontractors for Construction Work performed pursuant to subcontracts under this Master Agreement.

(viii)   Cost of any materials, supplies and equipment incorporated in the Construction Work, including costs of transportation and storage thereof, which is not supplied by Qwest.

(ix)    Sales, use, gross receipts, or other taxes (other than income taxes applicable to Contractor) related specifically to the Construction Work on a Contract Order and imposed by any governmental authority.

(x)    Transportation and subsistence charges when Contractor's employees are:

    a.    Away from their residence overnight performing Construction Work on a Contract Order.  A per diem charge per employee will be permitted per the terms of each Contract Order.

    b.    Mileage of twenty-eight cents ($.28) per mile when driving to or from a job site that is forty (40) miles or more from Contractor's principal office.  Airfare shall be allowed only with prior approval from Qwest's Representative.

**(d)    The following costs will not be reimbursed as part of the Cost of the Construction Work by Qwest:**

(i)    Salaries and other compensation paid to Contractor's employees stationed at Contractor's principal office or offices.

(ii)    Expenses of Contractor's principal office, and any offices other than the job site office.

(iii)    Other overhead or general expenses except those that are specifically included in Subparagraph 20.(c).

(iv)    Contractor's capital expenses, including interest on Contractor's capital employed for the Construction Work and charges against Contractor for delinquent payments.

(v)    Tools and tool-related parts that would reasonably be expected to be owned and used by a contractor performing the type of Construction Work contemplated hereby.

(vi)    Royalties, or damages for infringement of patents and costs of defending suits therefor.  If royalties or losses and damages, including costs of defense, are incurred which arise from a particular design, process, or the product of a particular manufacturer or manufacturers specified by Qwest, and Contractor has no reason to believe there will be infringement of patent rights, such royalties, losses, and damages shall be paid by Qwest and not considered as within the GMP.

(vii)    Minor expenses such as telegrams, telephone calls, telephone service, photocopies at the site, express services, and other petty cash items in connection with the Construction Work.

(viii)   Costs incurred due to an emergency affecting the safety of persons and property.

(ix)    Cost of data processing services required in the performance of the Construction Work.

(x)     Legal costs resulting from performing Construction Work for Qwest.

(xi)    Costs due to the fault or negligence of Contractor, Subcontractors, anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable, including but not limited to costs for the correction of damaged, defective or nonconforming work, disposal and replacement of materials and equipment incorrectly ordered or supplied, and making good damage to property not forming part of the Construction Work.

(xii)   All costs for the use of vehicles and related expenses, other than those described in Subparagraph 20.(c)(x)(b).

(xiii)  All insurance costs except to the extent specifically related to Contractor's employees working on the Contract Order, or called for in Subparagraph 20.(c)(vi).

(xiv)   All other costs not specifically and expressly described in Subparagraph 20(c).

21.    **APPLICATIONS FOR PAYMENT**.

(a)     Contractor shall submit to Qwest on a form provided by Qwest within two weeks following the end of each month, an application for each payment ("Application for Payment") requested for Construction Work performed pursuant to a Contract Order. Each Application for Payment shall require such information as will permit Qwest to verify that it is an accurate assessment of amounts owed to Contractor. The Application for Payment shall be certified as correct by Contractor. Each Application for Payment shall be reviewed by Qwest's Representative before being submitted for payment.

(b)     The amount so stated, not otherwise in dispute, subject to Qwest's withholding of ten percent (10%) of payments otherwise due and owing ("Retainage") for Construction Work until Final Payment, shall be paid by Qwest within thirty (30) Days of submission of the Application for Payment to Qwest.

(c)     Qwest reserves the right, before making any payments, or at any time during the progress of the Construction Work, to require Contractor to furnish evidence in a form provided by Qwest ("Lien Waiver Forms"), that all claims, liens and causes of action, if any, for the payment of wages or salaries or the payment of

charges for labor, materials, tools, machinery, or supplies have been satisfied, released or settled, and in case such evidence is not furnished, the amount of such claims, liens, and causes of action may be retained from any monies otherwise due Contractor hereunder until they shall have been furnished.

(d)     Contractor shall maintain for a period of three (3) years after Final Payment under this Master Agreement and related Contract Orders, all records and accounts pertaining to Design Services and Construction Work performed for Qwest. Qwest shall have the right to audit, copy and inspect said records and accounts at all reasonable times during the performance of such Design Services and Construction Work, and for three (3) years following Final Payment.

**22.     RIGHT TO OFFSET**.  Qwest, without waiver of any rights or remedies which it may at any time have against Contractor, shall be entitled from time to time to deduct from any amounts due or owing by Qwest to Contractor in connection with this Master Agreement, and Contract Orders (or any other agreement with Qwest), any amounts owed by Contractor to Qwest.

**23.     CHANGE ORDERS**.

(a)     The Design Services and Construction Work shall be subject to changes by additions, deletions, or revisions by the Change Order process.  Either Party may initiate a Change Order request.

(b)     Within five (5) Days following receipt of a Change Order request, Contractor shall submit its proposal in response to Qwest's Representative.  Such proposal will include a detailed cost estimate for the proposed change together with any adjustments in the GMP, Cost of the Construction Work, Construction Schedule and Contract Time required for the performance of the Design Services or Construction Work as modified.  Requests for extensions of Contract Time shall be accompanied with a fragmentary network for the Construction Schedule, or, if required, a complete update to demonstrate the impact of the proposed change on the Construction Schedule.

(c)     Change Orders must be signed by Qwest and Contractor in order to be binding on either.  Contractor shall not perform changes in the Design Services or Construction Work in accordance with Subparagraphs 23.(a) and 23.(b) above until both Parties have signified their acceptance of the impact on the GMP, Cost of the Construction Work, Construction Schedule, and Contract Time, if any by signing the Change Order.  Once the Change Order has been signed by Qwest and Contractor, then Contractor shall diligently perform the Design Services or Construction Work.

(d)     Contractor shall not suspend performance of Design Services or Construction Work pending the review and negotiation of any Change Order, except as may be directed by Qwest's Representative.

(e)     Contractor shall not comply with oral requests for changes in the Design Services or Construction Work received from Qwest unless Contractor deems that such changes will not affect the Cost of the Construction Work, Construction

Schedule, or integrity of the Design Services or Construction Work. If Contractor believes that any oral request for a change in the Design Services or Construction Work may involve a change in the Cost of the Construction Work, Construction Schedule, or integrity of the Design Services or Construction Work, Contractor shall require that the change be requested in writing and shall comply with all terms of this Paragraph 23.

(f)    Any and all costs incurred by Contractor to perform changes requested orally shall be for Contractor's account and Contractor shall not be entitled to claim any additional Contract Time or reimbursement for increased Costs of the Construction Work or increases in the cost of the Design Services. Contractor hereby waives any and all rights to claim from Qwest such costs or additional time to perform the Design Services or Construction Work as a result of compliance by Contractor with any oral requests for changes.

(g)    In no event shall Contractor be entitled to compensation for its costs in executing Change Orders unless Qwest's Manager of Contract Administration authorizes such action by issuance of a Change Order which will describe the change, detail the pricing of the change, and identify any adjustment in the time of performance of the Design Services or Construction Work. Upon receiving such authorization from Qwest, Contractor shall diligently perform the Change Order in conformity with the Contract Documents.

(h)    Qwest will not pay Contractor for any of its costs associated with preparing proposals pursuant to Change Order requests that are not executed.

(i)    Qwest shall have the right to order minor changes in the Construction Work not involving adjustment in the GMP or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by order and shall be binding on Qwest and Contractor. Contractor shall carry out such orders promptly.

**24.    TIME.**

(a)    The date of the commencement of the Design Services and Construction Work associated with a particular Contract Order are the dates of execution of Parts 1 and 2 of the Contract Order. Contractor shall not commence Design Services or Construction Work until such execution has occurred. Contractor shall notify Qwest in advance of the time actual construction operations will begin. The date shall not be postponed by the failure to act of Contractor or a person or entities for whom Contractor is responsible.

(b)    Time limits stated in this Master Agreement or any Contract Order are of the essence. Contractor is obligated to proceed expeditiously with the Design Services and Construction Work with adequate resources and to achieve Substantial Completion within the Contract Time. By executing Part 1 and Part 2 of a Contract Order, Contractor confirms that the Contract Time is a reasonable period of time for performing the Design Services and Construction Work. In the event Contractor fails

to complete the Construction Work within the Contract Time, Liquidated Damages, if any, shall accrue in the amounts and manner specified in the relevant Contract Order.

(c)    Contractor shall furnish sufficient forces, construction plant and equipment, and shall work such hours, including night shifts and overtime operations, as may be necessary to insure completion of the Design Services and Construction Work within the Contract Time.

(d)    Contractor shall prosecute the Design Services and Construction Work with sufficient forces, materials, and equipment to make progress in accordance with the Construction Schedule. Should the Construction Work in whole or in part fall behind the Construction Schedule, or should the progress of Construction Work appear to Qwest to be inadequate to insure Substantial Completion within the Contract Time specified in the Contract Order, Contractor shall, upon notice from Qwest, take appropriate steps within seven (7) Days of such notice to put the Design Services or Construction Work back on schedule. Contractor shall take such steps as may be necessary or as may be directed by Qwest to improve Contractor's progress, by increasing the number of shifts, overtime operations, days of work, and the amount of construction planned, as may be required, at no additional costs to Qwest.

(e)    Should Contractor fail to institute appropriate measures within seven (7) Days, or should the measures taken fail to put the Design Services or Construction Work back on schedule within the fourteen (14) Days of such notice, Qwest may, but shall not be required to, supplement Contractor's forces, materials, and/or equipment with other forces, materials and/or equipment. Contractor shall coordinate and work together with such forces, materials and/or equipment. The costs of such other forces, materials and/or equipment shall be deducted by Qwest from sums otherwise owing to Contractor. Qwest's use of such supplemental forces, materials and/or equipment shall not excuse Contractor from performing all of its obligations under this Master Agreement or relevant Contract Order or relieve Contractor from Liquidated Damages if specified in the Contract Order.

(f)    Failure of Contractor to comply with the requirements under this Paragraph 24 shall be grounds for determination that Contractor is not prosecuting the Design Services or Construction Work associated with a Contract Order with such diligence as will insure completion within the Contract Time and shall constitute a material breach of this Master Agreement. Therefore, Qwest may terminate the Master Agreement and the Contract Order for breach thereof.

## 25.   EXCUSABLE DELAYS.

(a)    In the event Contractor or Qwest is delayed in performing any of its respective obligations in this Master Agreement and such delay is caused by acts of God, war, riots, civil insurrection, acts of the public enemy, strikes, lockouts, accidents, acts of civil or military authority, fires, floods, or earthquakes or any other condition beyond the reasonable anticipation or control of the Party delayed ("Excusable Delay(s)"), such delay shall be excused and the period of such delay shall be added by a Change Order to the Contract Time. In addition, Contractor shall be entitled to treat as an Excusable Delay, any delay caused by the failure of Qwest to

**Master Contract No. BZ980026**

reasonably discharge any of its obligations hereunder, or any other delay which Qwest and Contractor agree in writing should be treated as an Excusable Delay hereunder. In the event of any Excusable Delay, the Party delayed shall, at no cost to the other Party, exercise due diligence to minimize the Excusable Delay and shall keep the other Party advised as to the continuance of the Excusable Delay and steps taken to shorten or resolve the Excusable Delay. Contractor shall not be entitled to claim or recover any damages or additional payment from Qwest for delays of any nature, an extension of Contract Time shall be Contractor's exclusive relief.

(b)     Claims relating to extensions of Contract Time shall be made in a timely manner. In no case will a Change Order requesting an extension of Contract Time be granted if notice of the event causing the Excusable Delay is not received by Qwest within five (5) Days its occurrence.

(c)     Contract Time shall not be extended for any weather-related delays.

(d)     Qwest's permitting Contractor to continue and finish the Design Services or Construction Work, or any part, after the time fixed for its completion, or after that date to which the time for completion may have been extended, will in no way operate as a waiver on the part of the Qwest of any rights under this Master Agreement or associated Contract Order.

## 26.   CLAIMS.

(a)     Subject to the provisions of Paragraph 23, hereof, Contractor shall give Qwest's Representative notice within five (5) Business Days after the happening of any event that Contractor believes may give rise to a claim by Contractor for an extension of the Contract Time.

(b)     Within ten (10) Days after the happening of such event, Contractor shall supply Qwest's Representative with a statement supporting Contractor's claim, which statement shall include Contractor's estimate of any change in the Contract Time occasioned thereby. If requested by Qwest, Contractor shall substantiate its claim with payroll documents, paid invoices, receipts, records of performance, and other documents reasonably satisfactory to Qwest's Representative.

(c)     Qwest shall not be liable for, and Contractor hereby waives, any claim or potential claim for an extension of Contract Time which Contractor knew or should have known and that was not reported by Contractor in accordance with the provisions of this Paragraph 26.

(d)     Contractor will continue the performance of the Design Services or Construction Work associated with any particular Contract Order during the time any claim for an extension of Contract Time by Contractor hereunder is pending.

(e)     Qwest shall not be bound to make any adjustments in the Contract Time for Contractor's claim unless expressly agreed to by Qwest in writing. Any decision to make an adjustment in the Contract Time will be at Qwest's sole discretion.

**27. LIQUIDATED DAMAGES.** Time is of the essence in the performance of Design Services or Construction Work by Contractor. Contractor acknowledges that it is contractually obligated to perform the Design Services or Construction Work associated with any Contract Order within certain strict time limits if so indicated in the Contract Order. Contractor further acknowledges that the failure of Contractor to complete the Design Services or Construction Work within Contract Time stated in the Contract Order, will subject Qwest to substantial costs, the exact amount of which is difficult or impossible to determine at the time of execution of this Master Agreement or any subsequently executed Contract Order. Therefore, in the event of any delay in the performance of Design Services or Construction Work by Contractor within the time permitted, Contractor shall pay Liquidated Damages, not intended as a penalty, if specified in the Contract Order.

**28. LIEN WAIVERS.**

(a)    To the fullest extent permitted by applicable Laws, Contractor hereby waives and releases any and all rights of mechanics, materialmen, or other similar liens and similar rights for payment for services, labor, equipment, or materials furnished by Contractor in performance of the Design Services or Construction Work and granted by Law to persons supplying materials, equipment, services and other things of value to improve or modify land or structures thereon, which Contractor, or others may have against Qwest or the right of way owner's premises, if any, property belonging to Qwest, or to any of them, or funds payable by Qwest to the right of way owner, if any.

(b)    Contractor shall at all times promptly pay for all services, materials, equipment, and labor used or furnished by Contractor in the performance of the Design Services or Construction Work under this Master Agreement and shall at its expense keep the right of way owner's premises, if applicable, and all property belonging to Qwest and/or the right of way owner free and clear of any and all of the above mentioned liens and rights of lien arising out of services, labor, equipment, or materials furnished by Contractor or its employees, materialmen, or subcontractors in the performance of the Construction Work. If Contractor fails to release and discharge any such claim of lien against the right of way owner's premises or the property of Qwest and/or the right of way owner arising out of performance of the Work within five (5) Business Days after receipt of notice from Qwest to remove such claim of lien, Qwest may, at its option, discharge or release the claim of lien or otherwise deal with the lien claimant, and Contractor shall pay Qwest any and all costs and expenses of Qwest in so doing, including reasonable attorney's fees incurred by Qwest, or alternatively Qwest may, at its choosing, deduct such costs and fees from monies otherwise owing to Contractor.

**29. CARE, CUSTODY, CONTROL, AND TITLE TO MATERIALS AND EQUIPMENT.**

(a)    Good and clear title to all material and equipment furnished by Contractor for the Construction Work shall pass to Qwest upon its incorporation into the Construction Work associated with a particular Contract Order. In addition, title to material and equipment not yet incorporated into Construction Work shall pass to Qwest when Contractor has been paid for such material and equipment. Contractor

shall ensure that vendors and suppliers from whom Contractor obtains materials and equipment do not retain, encumber, or reserve title to such items. Contractor shall execute such other and additional documentation as Qwest may require as evidence of such transfer of title to Qwest.

(b)    Notwithstanding Subparagraph 29.(a) above, the care, custody, and control (but not title) of material and equipment incorporated into the Construction Work shall remain with Contractor until the date of Substantial Completion, unless Qwest notifies Contractor that such care, custody, and control is assumed by Qwest at an earlier date. The taking of possession by Qwest of the Construction Work, or any part thereof, shall not constitute the assumption of care, custody, and control of the Construction Work until the date of Substantial Completion.

**30.    ROYALTIES AND PATENTS.** Contractor shall pay all royalties and license fees associated with the performance of Design Services or Construction Work on any Contract Order. Contractor shall defend, hold harmless, and indemnify Qwest for suits or claims of infringement of any intellectual property rights.

**31.    SUSPENSION OF DESIGN SERVICES OR CONSTRUCTION WORK.**

(a)    Qwest may at any time, and from time to time, by notice to Contractor ("Notice of Suspension"), suspend further performance of all or any portion of the Design Services or Construction Work associated with a Contract Order. Said Notice of Suspension shall specify the day of suspension and the estimated duration of the suspension. Upon receiving a Notice of Suspension, Contractor shall promptly suspend further performance of such Design Services or Construction Work to the extent specified, and during the period of such suspension shall properly care for and protect all Design Work or Construction Work in progress and materials, supplies, and equipment Contractor has on hand for performance of the Design Services or Construction Work. Upon the request of Qwest, Contractor shall promptly deliver to Qwest copies of outstanding purchase orders, rental agreements and subcontracts of Contractor for materials, equipment and services for the Construction Work, and shall take such action relative to such purchase orders and subcontracts as may be directed by Qwest. Qwest may at any time withdraw the suspension of performance of the Design Services or Construction Work as to all or part of the suspended Design Services or Construction Work by notice to Contractor specifying the effective date and scope of withdrawal, and Contractor shall resume diligent performance of the Design Services or Construction Work for which the suspension is withdrawn.

(b)    If the Design Services or Construction Work is suspended, Contractor shall store all materials in such a manner that they will not become an obstruction nor become damaged in any way. Contractor shall take every precaution to prevent damage or deterioration of the Construction Work performed and provide for normal drainage of the Construction Work. Contractor shall erect temporary structures where necessary to provide for traffic on, to, or from the job site.

(c)    If Contractor believes that any such suspension or withdrawal of suspension justifies modification of the GMP, Cost of the Construction Work, Construction Schedule, or Contract Time, Contractor shall comply with the procedure

set forth in Paragraph 23, hereof. In no event shall Contractor be entitled to any prospective profits or any damages because of such suspensions or withdrawals of suspension.

**32.    TERMINATION FOR CAUSE.**

(a)    If Contractor is adjudged a bankrupt, or if Contractor makes a general assignment for the benefit of Contractor's creditors, or if a receiver is appointed on account of Contractor's insolvency, or if Contractor persistently or repeatedly refuses or fails, except in cases for which an extension of Contract Time is provided, to supply enough properly skilled workmen or proper materials, or if Contractor fails to make prompt payment to Subcontractors or for materials or labor, or persistently disregards Laws of any public authority having jurisdiction, or disregards an instruction, order or decision of Qwest, or otherwise is guilty of a material breach of any provision of the Master Agreement or related Contract Order, or if any of the following occur, then Contractor shall be in default:

(i)    If Contractor fails to begin the Design Services or Construction Work under the Master Agreement or related Contract Order within the time specified in this Master Agreement; or

(ii)    If Contractor performs the Design Services or Construction Work unsuitably or neglects or refuses to remove materials or to perform anew such Design Services or Construction Work as may be rejected as unacceptable and unsuitable; or

(iii)    If Contractor discontinues the prosecution of the Design Services or Construction Work; or

(iv)    If Contractor fails to resume Design Services or Construction Work which has been suspended within a reasonable time after notice to do so; or

(v)    For any other cause whatsoever, Contractor fails to carry on the Design Services or Construction Work in an acceptable manner.

(b)    Should Qwest consider Contractor in default of the Master Agreement or related Contract Order for any reason herein before, Qwest will immediately give notice to Contractor and Contractor's Surety, if any, as to the reasons for considering Contractor in default and Qwest's intention to terminate the Master Agreement and related Contract Order. If Contractor or Surety, within a period of five (5) Days after such notice, does not proceed in accordance therewith, then Qwest, may, without prejudice to any other right or remedy and upon notice to Contractor and Contractor's Surety, if any, take possession of all materials, tools, appliances, equipment and machinery and vehicles, offices and other facilities of the Project, and all materials intended for the Design Services or Construction Work, wherever stored, and within seven (7) Days after such notice, Qwest may terminate the employment of Contractor and finish the Design Services or Construction Work by whatever method Qwest may

**Master Contract No. BZ980026**

deem expedient. In such case Contractor shall not be entitled to receive any further payment until the Design Services or Construction Work is completed.

(c)    Qwest shall be entitled to collect from Contractor all direct, indirect, and consequential damages suffered by Qwest on account of Contractor's default, including without limitation, additional services and expenses made necessary thereby. Qwest shall be entitled to hold all amounts due Contractor at the date of termination until all of Qwest's damages have been established, and to apply such amounts to such damages. If such expense exceeds the sum which would have been payable under the Master Agreement and related Contract Order, then Contractor and Contractor's Surety, if any, shall be liable and shall pay to Qwest the amount of such excess.

(d)    If it is determined that Contractor was not in default pursuant to this Paragraph 33, then the termination will revert to a Termination for Convenience under Paragraph 33.

(e)    Termination of Contractor's employment hereunder shall not relieve Contractor or Contractor's Surety, if any, of liability for past and future damages and losses incurred by Qwest on account of any act, omission, or breach by Contractor. Liability for Liquidated Damages, if any, shall continue to accrue as set forth in the Contract Documents.

(f)    If the unpaid balance of the GMP, minus damages owed to Qwest, exceeds the costs of finishing the Construction Work, such excess shall be paid to Contractor. If such costs of finishing the Construction Work, plus damages owed to Qwest, exceed the unpaid balance, Contractor shall pay the difference to Qwest. The amount to be paid to Contractor or Qwest, as the case may be, shall survive termination of the Master Agreement and related Contract Order.

(g)    If Qwest:

(i)    fails to pay Contractor any amount not in dispute within thirty (30) Days after such amount became payable in accordance with the terms of this Master Agreement or Contract Order;

(ii)    is insolvent or generally unable to pay its debts as they become due (or admits in writing that it is generally unable to pay its debts as they become due), makes a general assignment for the benefit of creditors, or in any way becomes subject (as debtor) to an order entered by a bankruptcy court for relief from creditors (and such order, if entered without the consent of Qwest, is not dismissed within sixty (60) Days after entry thereof) or to the appointment of a trustee or a receiver for a substantial portion of its assets and such trustee or receiver is not discharged within sixty (60) Days of its appointment; or

(iii)    fails to meet any other material contractual obligation of Qwest under this Master Agreement or Contract Order; then

**Master Contract No. BZ980026**

Contractor shall be entitled to serve a notice of default on Qwest. If within fifteen (15) Days after delivery of such notice to Qwest, Qwest has not cured the default specified in the notice of default or commenced to cure if the default is one not reasonably capable of cure within fifteen (15) Days, other than subsection (g)ii above, then Contractor shall be entitled to terminate this Master Agreement and Contract Order. Contractor may immediately terminate this Master Agreement and Contract Order upon the occurrence of the event referred to in subsection (g)ii above.

(h)    If Contractor terminates this Master Agreement and Contract Order pursuant to subparagraph (g), Qwest shall pay Contractor as if it were a termination for convenience by Qwest.

## 33.    TERMINATION FOR CONVENIENCE.

(a)    If Qwest determines that a termination is in Qwest's interest Qwest may terminate performance of Design Services or Construction Work under this Master Agreement or related Contract Order in whole or in part. Qwest shall terminate by delivery to Contractor of a notice specifying the extent of termination and the effective date ("Notice of Termination").

(b)    After receipt of a Notice of Termination, and except as directed by Qwest, Contractor shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting any amounts due under this Paragraph;

(i)    Stop Design Services or Construction Work as specified in the Notice of Termination.

(ii)    Place no further subcontracts or orders for materials, services, or facilities, except as necessary to complete the continued portion of the Design Services or Construction Work.

(iii)    Terminate all subcontracts to the extent they relate to the Design Services or Construction Work terminated.

(iv)    Assign to Qwest, as directed, all rights, title, and interest of Contractor under the subcontract terminated, in which case Qwest shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.

(v)    With approval or ratification to the extent required by Qwest, settle all outstanding liabilities and termination settlement proposals arising from the terminations of subcontracts; the approval or ratifications will be final for purposes of this Paragraph.

(vi)    As directed by Qwest, transfer title and deliver to Qwest (1) the fabricated or unfabricated parts, Design Services or Construction Work in progress, completed Design Services or Construction Work, supplies, and other material produced or acquired for the Design Services or Construction

Work terminated, and (2) the completed or partially completed Drawings, Specifications, information, and other property that, if the Design Services or Construction Work had been completed, would be required to be furnished to Qwest.

(vii)    Take any action that may be necessary, or that Qwest may direct, for the protection and preservation of the property related to the Design Services or Construction Work that is in the possession of Contractor and in which Qwest has or may acquire an interest.

(viii)    Use its best effort to sell, as directed or authorized by Qwest, any property of the types referred to in subparagraph (vi) above; provided, however, that Contractor (1) is not required to extend credit to any purchaser and (2) may acquire the property under the conditions prescribed by, and at a process approved by, Qwest. The proceeds of any transfer of disposition will be applied to reduce any payments to be made by Qwest under this Master Agreement or related Contract Order, credited to the price or cost of the Design Services or Construction Work, or paid in any manner directed by Qwest.

(c)    Contractor may submit to Qwest a list, certified as to quantity and quality, of termination inventory not previously disposed of, excluding items authorized for disposition by Qwest. Within thirty (30) Days, Qwest will accept title of those items and remove them or enter into a storage agreement. Qwest may verify the list upon removal of the items, or if stored, within forty-five (45) Days from submission of the list, and shall correct the list, as necessary, before final settlement.

(d)    After termination, Contractor shall submit a final termination settlement proposal to Qwest in the form and with the certification prescribed by Qwest. Contractor shall submit the proposal promptly, but no later than sixty (60) Days from the effective date of termination, unless extended in writing by Qwest upon request of Contractor. If Contractor fails to submit the proposal within the time allowed, Qwest may determine on the basis of information available, the amount, if any, due Contractor because of the termination and shall pay the amount determined. No further compensation will be considered if Contractor fails to meet the submittal requirements.

(e)    Subject to Paragraph (d) above, Contractor and Qwest may agree upon the whole or any part of the amount to be paid because of the termination of Design Services or Construction Work. As to Construction Work, the amount may include Contractor's Fee on Construction Work completed. However, the agreed amount for Construction Work terminated may not exceed the GMP as reduced by (1) the amount of payments previously made and (2) the Cost of the Construction Work not terminated. The relevant Contract Order shall be amended and Contractor paid the agreed amount. Subparagraph (f) shall not limit, restrict, or affect the amount that may be agreed upon to be paid.

(f)    If Contractor and Qwest fail to agree on the whole amount to be paid Contractor because of termination of Design Services or Construction Work, Qwest

shall pay Contractor the amounts determined as follows, but without duplication of any amounts agreed upon under Paragraph (e) above:

      (i)    For Design Services or Construction Work performed before the effective date of termination, the total (without duplication of any items) of The Cost of the Design Services or Cost of the Construction Work;

          a.    The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the termination portion of the Contract Order not included in Subdivision (a) above; and

          b.    The Contractor's Fee of ten percent (10%) on the Cost of the Construction Work.  If it appears however that Contractor would have sustained a loss on the entire Construction Work had it been completed, Qwest shall not pay Contractor's Fee under this Subdivision (c) and shall reduce the settlement to reflect the indicated rate of loss.

      (ii)    The reasonable costs of settlement of the Design Services or Construction Work terminated including:
Reasonable account, clerical, and other expenses necessary only for the preparation of termination settlement proposals and supporting data;

          a.    The termination and settlement of subcontracts (excluding the amounts of such settlements);

          b.    Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory; and

          c.    Reimbursement for organization of the Design Services or Construction Work, and other overhead expenses (when not otherwise included in the Contract Order), and moving equipment and materials to and from the job site will be considered, the intent being that an equitable settlement will be made with Contractor.

      (g)    Except for normal spoilage, and except to the extent that Qwest expressly assumed the risk of loss, Qwest shall exclude from the amounts payable to Contractor under Subparagraph (f) above, the fair value, as determined by Qwest, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to Qwest.

      (h)    In arriving at the amount due Contractor under this Paragraph, there shall be deducted

      (i)    All unliquidated advance or other payments to Contractor under the terminated portion of the Contract Order;

(ii)     Any claim which Qwest has against Contractor under this Master Agreement, related Contract Order, or otherwise; and

(iii)    The agreed price for, or the proceed of sale of materials, supplies, or other things acquired by Contractor or sold under the provisions of this Paragraph and not recovered by or credited to Qwest.

## 34.   INDEMNITY.

(a)     In addition to Contractor's obligation to obtain and keep insurance as set forth elsewhere in this Master Agreement, Contractor shall indemnify, defend, and hold harmless Qwest and its officers, agents and employees, from all suits, actions, damages or claims of any character (i) brought because of any injuries or damage received or sustained by any person or property which in whole or in part arise on account of the acts or omissions of Contractor in the performance of Design Services or Construction Work; (ii) on account of, or in consequence of, any neglect in safeguarding the Construction Work associated with any Contract Order; (iii) concerning use of unacceptable materials in the Construction Work associated with any Contract Order; (iv) because of any act or omission, neglect or misconduct of Contractor, its subcontractors, their officers, employees, agents, servants, or assigns; (v) because of any claims or amounts recovered from any infringement of patent, trademark, or copyright; (vi) under the Workers Compensation Act, or any other Law, regardless of whether such injuries or damage are caused in part by the negligence of the Parties indemnified hereunder.  Contractor shall reimburse Qwest and its officers and employees, and any and all costs incurred by them in defending or investigating any such suit, action, or claim, including attorneys' fees, expert witness fees, investigative and court costs.

(b)     Promptly after receipt by any Party to whom indemnification is owed by Contractor of any claim or notice of the commencement of any action, administrative or legal proceeding, or investigation as to which the indemnity provided in this provision may apply, the Party shall notify Contractor in writing of such fact. Contractor shall assume on behalf of the Party and conduct with due diligence and in good faith the defense thereof; provided, however, that the Party to be indemnified shall have the right to be represented therein by advisory counsel of its own election and at its own expense; and provided further, that if the defendants in any such action include both Contractor and the Party to be indemnified and the Party to be indemnified shall have reasonably concluded that there may be legal defenses available to it that are different from or additional to, or inconsistent with, those available to Contractor, the Party to be indemnified shall have the right to select separate counsel to participate in the defense of such action on its own behalf at Contractor's expense, unless the Party to be indemnified has intentionally caused a conflict requiring separate counsel.  In the event that a conflict of interest arises between Contractor and the Party to be indemnified hereunder, Contractor shall bear the reasonable attorney fees of the Party to be indemnified.

(c)     The obligations of this Paragraph 34 shall survive termination of the Master Agreement or Contract Order.

**Master Contract No. BZ980026**

35.  INSURANCE.

(a)  Prior to commencement of the Design Services or Construction Work, and at all times during the performance of the Design Services or Construction Work, Contractor shall secure and maintain insurance coverage in the form and amounts set forth in the following paragraphs and provide Qwest with an insurance certificate confirming compliance with this requirement for each policy providing such required coverage.  The insurance certificate shall indicate that Qwest shall be notified not less than thirty (30) Days prior to any cancellation or material change in coverage and be named as an "additional insured."  Such certificate of insurance shall have the phrase "endeavor to" deleted.  Additionally, language attempting to waive the brokers liability for failure to provide notice will not be permitted.  All coverages secured by Contractor shall be on a "Per Occurrence" basis.  All insurance policies shall be obtained and maintained with companies rated "A" or better by Best's Key Rating Guide.  Contractor's insurance shall cover any costs of Qwest incurred because of Contractor's Design Subcontractor's and Subcontractors who perform any of the Design Services or  Construction Work, or Contractor shall require each such Subcontractor to maintain, and provide evidence of, insurance of the type and amounts required of Contractor.

(b)  Contractor hereby waives any and all rights to recover against Qwest, or against the officers, directors, shareholders, partners, joint venturers, employees, agents, customers, invitees or business visitors of Qwest, for any loss or damage to Contractor arising from any cause covered by any property insurance required to be carried pursuant to this section or any other property insurance actually carried by Contractor.  Contractor, from time to time, will cause its insurers to issue appropriate "waiver of subrogation rights" endorsements to all property insurance policies carried in connection with this Contract.  Qwest shall, to the extent permitted by its insurer, waive subrogation rights contained in any property insurance policy carried by Qwest.

(c)  Insurance coverage provided for under this Contract shall be written for not less than the limits of liability described in the following paragraphs or such limits as may be required by Law, whichever is greater.

(d)  Workers' Compensation and Employer's Liability Insurance covering all employees of Contractor and any Subcontractors wherever they may be in the United States so long as they are engaged in Design Services or Construction Work covered by this Master Agreement.  Workers' Compensation insurance in amounts required by applicable Law and Employer's Liability insurance with a limit of at least one million dollars ($1,000,000) per occurrence is required.

(e)  Commercial General Liability Insurance (Bodily Injury and Property Damage) which shall provide not less than five million dollars ($5,000,000) combined single limit liability insurance on an occurrence basis, with the railroad exclusion deleted if working on or about a railroad right of way, protecting Contractor and any Subcontractors from liability arising out of Construction Work for:  (a) bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person; and (b) damage to or destruction of property, including loss of use thereof.

(f)     Contractor shall maintain at all times during the term of this Contract "All Risks" Builder's Risk insurance in an amount equal to the replacement cost of the Construction Work during any stage of Construction. Such insurance shall also cover all materials and equipment stored on at the job site for incorporation into the Construction Work as well as all partially constructed structures. Such insurance shall specifically insure against theft of building materials and shall be endorsed to permit partial occupancy. Such policy shall not contain a "coinsurance provision." It will be endorsed to name as insureds, Qwest, Contractor, and Subcontractors of every tier "as their interests may appear."

(g)     Contractor shall procure and maintain automobile liability insurance covering death or injury to any person or persons, or damage to property arising from the operation of vehicles or equipment, with limits of not less than two million dollars ($2,000,000) per occurrence combined single limit.

(h)     Contractor or Contractor's Design Subcontractors shall procure and maintain Architects and Engineers Professional Liability insurance with minimum limits of one million dollars ($1,000,000) per claim. It is permitted to procure this coverage on a "claims made" basis.

(i)     In the event Contractor fails to obtain the required insurance or to obtain the required certificates from any subcontractor and a claim is made or suffered, Contractor shall indemnify, defend, and hold harmless Qwest from any and all claims for which the required insurance would have provided coverage. Further, in the event of any such failure which continues after seven (7) Days' notice thereof by Qwest, Qwest may, but shall not be obligated to, obtain such insurance and will have the right to deduct the cost of such insurance from the monies due Contractor and terminate the Master Agreement and Contract Order .

(j)     In the event coverage is denied or reimbursement of a properly presented claim is disputed by the carrier for insurance provided above, Contractor, or any subcontractor carrying such coverage, shall make good faith efforts to pursue such claim with its carrier.

## 36.    PERFORMANCE AND PAYMENT BONDS.

(a)     Contractor may be required per the terms of a Contract Order to furnish payment and performance bonds in the full amount of the GMP with surety or sureties for the full and faithful performance of the Construction Work. The surety on any bond shall be a corporate surety authorized to write that type of bond through a resident agent of the corporation located in the state where the Construction Work is to be performed. Bid bonds are required to be submitted with Contractor's response to Qwest's RFP. Performance and Payment bonds are to be furnished to Qwest prior to the commencement of Work, if required per the terms of the Contract Order.

(b)     Upon request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract Order, Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

**Master Contract No. BZ980026**

(c)    If the surety on any bond furnished by Contractor is declared a bankrupt or becomes insolvent or its right to do business is terminated in any state where any part of the Construction Work is located or it ceases to be licensed to conduct business in the state where the Construction Work is located, Contractor shall, at Contractor's expense within five (5) Days thereafter, substitute another bond and surety, both of which shall be acceptable to Qwest.  Contractor shall provide a performance bond and payment bond, each in the amount of one-hundred percent (100%) of the GMP written by a surety licensed to do business in the state where the Construction Work is to be performed.

(d)    Attorneys-in-fact who sign any bonds shall file with such bond a certified copy of their power of attorney to sign such bond.

(e)    To be acceptable to Qwest, a surety company issuing one-hundred percent (100%) performance and payment bonds called for in this Master Agreement shall comply with the following minimum standards:

(i)    Surety must be licensed to do business in the state where the Construction Work is to be performed.

(ii)    Surety shall have been in business and have a record of successful continuous operations for the last five (5) years.

(iii)    Surety shall be listed as an approved surety in the treasury list published in the Federal Register.

(iv)    Surety shall also have a current rating by A. M. Best Company of "B+" up to $2,500,000 bond amount and "A" if over $2,500,000 bond amount.

(v)    Should the surety lose its minimum rating, Qwest shall have the right to require a change of surety to an acceptable surety.

(f)    During the term of the bond, it shall contain a waiver of alteration to the terms of the Contract Documents, extensions of Contract Time and/or other forbearance on the part of Qwest

(g)    In the event that bonds are required in accordance with this Paragraph, but are not provided, Qwest shall have the right to terminate the Contract Order and Master Agreement, and shall be entitled to any other relief provided by the Contract Documents.

(h)    Bond coverage shall be adjusted by Contractor during the term of the Contract Order to reflect any material modifications to the Construction Work made by Change Orders.

37.    SAFETY.

(a)    Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of Construction Work under this Master Agreement.

(b)    Contractor shall take reasonable precautions for the safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

(i)    Employees performing services in completion of the Construction Work and other persons who may be affected thereby;

(ii)    The Construction Work, and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of Contractor and Subcontractors of every tier;

(iii)    Other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction; and

(iv)    Any other property of Qwest, or construction by separate contractors.

(c)    Contractor shall give notices and comply with applicable Laws bearing on safety of persons or property or their protection from damage, injury or loss.

(d)    Contractor shall erect and maintain as required by existing conditions and performance of the Contract Order, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

(e)    When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Construction Work, Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

(f)    Contractor shall designate a responsible member of its organization at the job site whose duties shall be the prevention of accidents.  This person shall be Contractor's superintendent unless otherwise designated by Contractor in writing to Qwest.

(g)    Contractor shall not load or permit any part of the construction or job site to be loaded so as to endanger its safety.

(h)    When working on railroad right of ways, the safety and continuity of operations of trains are of paramount importance.  Contractor shall arrange its Construction Work so that the railroad personnel, trains, tracks, and appurtenances will be protected and safeguarded at all times.

(i)    Contractor shall comply with the provisions of the Occupational Safety and Health Act of 1970, 84 Stat. 1190, 29 U.S.C. 611 et seq. (as amended), and applicable regulations and requirements under said act.  Contractor shall maintain an accurate record of all accidents causing death, traumatic injury, occupational disease,

or damage to property, materials, supplies and equipment incidental to work performed under this Master Agreement and Contract Orders.

(j)     Contractor shall be responsible for all damage or injury to property of any character during the prosecution of the Construction Work, resulting from any act, omission, neglect, or misconduct in Contractor's manner or method of executing the Construction Work.

(k)     When or where any direct or indirect damage or injury is done to public or private property by or on account of any act, omission, neglect, or misconduct in the execution of the Construction Work, or in consequence of the non-execution thereof by Contractor, Contractor shall restore, at Contractor's own expense, such property to a condition similar or equal to that existing before such damage or injury was done.

(l)     Construction Work that is to remain in place which is damaged or defaced by reason of Construction Work performed under a Contract Order shall be restored at no additional cost to Qwest.

(m)     Until Substantial Completion of Construction Work associated with a particular Contract Order, Contractor shall have the charge and care thereof and shall take every precaution against injury or damage to any part due to the action of the elements or from any other cause, whether arising from the execution or from the non-execution of the Construction Work.  Contractor shall rebuild, repair, restore, and make good all injuries or damage to any portion of the Construction Work occasioned by any of the above causes before Substantial Completion and shall bear the Cost thereof.

**38.    CLEANUP AND DISPOSAL OF WASTE.**

(a)     Contractor shall, at all times, keep the job site, including storage areas used, free from accumulations of waste materials or rubbish.

(b)     Prior to Substantial Completion of the Construction Work, Contractor shall remove from the vicinity of the job site, all rubbish, unused materials, concrete forms, and other material belonging to it or used under its direction during the performance of Construction Work.

(c)     Waste materials, including, but not restricted to, refuse, garbage, sanitary wastes, industrial wastes, oil and other petroleum products, removed from the job site shall be disposed of by Contractor at an approved disposal site.

(d)     It shall be the responsibility of Contractor to make any necessary arrangements with private parties and with state and local officials having jurisdiction over locations of such dumping.

(e)     Contractor shall have no responsibility to undertake remediation or removal of any pollutant, contaminant, solid waste, hydrocarbon product, toxic or hazardous substance or waste, or flammable, explosive or radioactive material, or

similar item or material as defined and regulated or under or subject to any Law ("Hazardous Material"); however, Contractor shall be responsible for all costs, losses, claims, and expenses of any kind associated with the cost of remediation or removal of Hazardous Material that was (1) first brought to the job site by Contractor or (2) was disturbed or released by Contractor after Contractor's having obtained actual knowledge of the existence of such Hazardous Material.

(f)    Any material to be disposed of by removal shall be removed from the job site prior to Substantial Completion of the Construction Work.

**39.    NOTICES.**  All notices, approvals, authorizations, orders, consents, claims, requests, change orders, delivery instructions and other communications under this Master Agreement and Contract Orders shall be in writing and shall be (a) mailed by United States postal service certified mail, return receipt requested, or (b) sent by express courier, addressed to the Parties at the address set forth below, or to such other address as may be furnished to the other Party from time to time by notice, and shall be deemed delivered when received at such address.

If to Qwest, to:

> Sharon A. Haag, Manager, Contract Administration
> Qwest Communications Corporation
> 555 Seventeenth Street, Suite 1200
> Denver, Colorado  80202

with a copy to:

> General Counsel
> Qwest Communications Corporation
> 555 Seventeenth Street
> Denver, Colorado  80202

If to Contractor, to:

> Mr. James Maniscalco
> Builders Group
> One Wall Street Court
> New York, New York  10005

**40.    NOTICE OF SUBSTANTIAL COMPLETION.**

(a)    Substantial Completion is the stage in the progress of the Construction Work when the Construction Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that Qwest can occupy or utilize the Construction Work for its intended purpose.  Qwest, in its sole discretion, shall make such determination.

(b)    When Contractor deems the Construction Work associated with a particular Contract Order Substantially Complete, including satisfactory completion

**Master Contract No. BZ980026**

of such inspections, tests and documentation as are specified in the Contract Order, Contractor shall request an inspection from Qwest, specifying the Construction Work completed and the date it was completed. Following receipt of such request, Qwest will inspect the Construction Work and shall either reject the Construction Work and identify the uncompleted portions or defective portions, or shall issue to Contractor a written acknowledgment ("Notice of Substantial Completion") that the Construction Work is Substantially Complete.

(c)    If Qwest rejects the Construction Work and identifies defective or uncompleted portions of the Construction Work, Contractor shall, within seven (7) Days of notice from Qwest, commence to remedy such defective and uncompleted portions of the Construction Work. Thereafter, Contractor shall again request that Qwest inspect the Construction Work, specifying a new date for the completion of the Construction Work based on the date such defective or uncompleted portions of the Construction Work were corrected. The foregoing procedure shall apply again and successively thereafter until Qwest has issued to Contractor a Notice of Substantial Completion.

(d)    Any Construction Work items or requirements of the Contract Documents that remain incomplete or defective as of the date of Substantial Completion will form the initial Punch List for Final Completion.

(e)    When the Work is certified by Qwest as Substantially Complete, Qwest shall prepare as an attachment to the Notice of Substantial Completion an exhibit which shall establish: the date of Substantial Completion, the responsibilities of Qwest and Contractor for security, maintenance, heat, utilities, damage to the Construction Work; and insurance. However, all warranties required by the Contract Documents shall not commence until the date of Final Completion. The Notice of Substantial Completion shall be submitted to Contractor by Qwest for Contractor's written acceptance of the responsibilities assigned.

(f)    Upon Substantial Completion and upon application by Contractor, Qwest may, in its sole discretion, make payment, reflecting an adjustment in Retainage.

(g)    In all cases, Qwest shall retain no less than 150% of the estimated cost to complete outstanding Punch List items.

(h)    Any failure by Qwest to inspect or to reject the Construction Work as set forth above, shall not be deemed to be acceptance of the Construction Work for any purpose by Qwest nor imply acceptance of or agreement with Contractor's assertion that the Construction Work is Substantially Complete.

**41.    FINAL COMPLETION AND FINAL PAYMENT.**

(a)    Following Substantial Completion, when Contractor deems the Construction Work associated with a particular Contract Order to be complete, Contractor shall request that Qwest inspect the Construction Work, specifying the date that such Construction Work became complete. Following receipt of